ALFRED G. HAY, Respondent, v. AMERICAN
FIRE CLAY COMPANY, Appellant.

**St. Louis Court of Appeals, December 31, 1913.**

1. **EVIDENCE: Primary Evidence: Carbon Copy.** A carbon copy
of a document made by the same imprint as the typewritten
original is regarded as an original and may be introduced in
evidence although the typewritten original is not accounted for.

2. ———: **Unsigned Written Instrument: Admissibility.** A docu-
ment setting out the terms of a contract, but not signed, is
not admissible in evidence as a written contract.

3. ———: **Memorandum: Admissibility.** A written memorandum
relating to a transaction, made by one party without the
knowledge of the other, is not admissible in evidence, unless
it was made contemporaneously with the transaction, and
even then it can be used only for the purpose of refreshing
the memory of the witness making it and as auxiliary to his
testimony.

4. **CORPORATIONS: Powers of Officers: Admissions.** The presi-
dent and secretary of a corporation can make admissions
against it.

5. **EVIDENCE: Admissions: Corporations.** In an action against
a corporation for breach of a contract of employment, a written
memorandum setting forth the terms of the agreement, made
by the secretary of the corporation at the request of the
president and approved by him, was admissible in evidence
as an admission by the corporation, although the president
testified that he had never seen or approved it; such denial
going to the weight of the evidence and not to its admissi-
bility.

6. ———: ———: **Time of Admission.** An admission by the
adverse party is competent evidence notwithstanding it was
not made contemporaneously with the agreement constituting
the subject-matter of the suit.

7. **TRIAL PRACTICE: Credibility of Witnesses: Question for
Jury.** The weight and value of the testimony and the credi-
bility of the witnesses giving it are questions for the jury.

Appeal from St. Louis City Circuit Court.—*Hon.
Charles Claflin Allen*, Judge.

AFFIRMED.

*Watts, Gentry & Lee* for appellant.

The court erred in admitting over defendant's objection, Exhibit A, offered by plaintiff which was a carbon copy of a memorandum drawn up by the witness Crawford several days after the making of the alleged oral agreement between plaintiff and defendant on July 8, 1911. The admission of this memorandum was error because: First: It was not the contract sued upon and was in fact no contract at all for it was signed by nobody. Second: It was not admissible as an original memorandum because it was not made at the time of the transaction between the parties, on July 8, 1911, and even if it had been an original memorandum it would not have been admissible for the purpose of refreshing the recollection of the witness, Crawford, for his recollection needed no refreshing. Wells v. Hobson, 91 Mo. App. 379; Railroad v. O'Brien, 119 U. S. 99; National Ulster Co. Bank v. Madder, 114 N. Y. 280, 11 Am. St. 633; State v. Menard, 110 La. 1098; McKelvey on Ev., Sec. 233, p. 323; Russell v. Railroad, 17 N. Y. 140; Brown v. Jones, 46 Barb. 400; Meacham v. Pell, 51 Barb. 65. Third: It did not prove, nor tend to prove, the terms of the oral agreement for the statements contained in it were statements made by the witness Crawford, as he dictated it in the absence of both parties to the contract; therefore those statements were merely hearsay. Barrie v. United Rys. Co., 125 Mo. App. 96. Fourth: If the original of said memorandum had been admissible, this carbon copy (Exhibit A, is shown by the witness Crawford to have been a carbon copy of the original) was not admissible because the absence of the original was not accounted for and defendant was not shown to have possession of it, nor had any notice ever been served upon defendant to produce it, and no effort to

find the original was shown.   Brunnemer v. Cook & Co., 85 N. Y. Supp. 956; Blondeau v. Sheridan, 81 Mo. 545; Ebersole v. Rankin, 102 Mo. 488; McCooney v. Wallace, 22 Mo. 377; Lohnes v. Baker, 156 Mo. App. 397; Henderich v. Railway Co., 159 Mo. App. 190; Myers v. Brice, 12 Weekly Notes of Cases, 87; Gurley v. McLennon, 17 App. Cases, 170.   Fifth:   Counsel for plaintiff stated in offering Exhibit A that he offered it as an admission and, further, that he offered it as evidence tending to prove the oral contract.   It was not competent for the purpose of showing an admission, for Dr. Cale, president of the defendant company, was not shown to have ever agreed that it contained the terms of the alleged oral agreement.   The mere fact that it was shown to him by Crawford, if it was so shown to him, and no evidence was offered to show that he denied its correctness does not tend to prove an admission by him.   Exposition Co. v. Emerson, 149 Mo. App. 594; Senn v. Ry. Co., 108 Mo. 142.

*John A. Blevins* and *J. W. Jamison* filed argument for respondent.

STATEMENT.—This is a suit on a contract of employment alleged to have been entered into between plaintiff and defendant corporation for the rendering of services by plaintiff to defendant.   The finding and judgment were for plaintiff and defendant prosecutes the appeal.

Appellant's counsel has stated in the brief fully and fairly the relevant facts appearing in the record, and this we adopt as a sufficient statement concerning the matter in judgment.   The statement referred to is as follows:

"The petition alleges the incorporation of the defendant and charges that it owned a tract of land in St. Louis county, Missouri, containing valuable deposits of fire clay; that on or about the 8th of July, 1911, the parties entered into an agreement by which

plaintiff agreed to render services thereafter, from time to time as might be required of him, in the work of mining the said clay deposit and marketing the same, and that defendant agreed to pay him for such services a salary of $300 per month; that the plaintiff, at the request of defendant, entered upon negotiations for the purchase of suitable machinery to be used in said work and performed other services as was required of him, but that defendant neglected and failed to enter upon the actual work of developing said property and to furnish suitable machinery therefor, and failed to furnish plaintiff employment with respect to said work which he contracted to do. It is further alleged that plaintiff at all times held himself in readiness to carry out his contract and has waited in expectation of being called by defendant at any time to render services under his contract. The petition closes with a prayer for judgment for $1200.

"On the part of the plaintiff two witnesses were called, Mr. S. K. Crawford and the plaintiff himself. The testimony given by these two witnesses tended to establish the following facts:

"Dr. Geo. W. Cale, Jr., was the president and principal stockholder of the defendant company and managed and controlled its affairs. Mr. Crawford was secretary and one of the directors of said company, defendant having had one share of stock put in his name so as to entitle him to serve on the board of directors. Crawford was then chief clerk in the medical department of the Frisco Hospital, while Dr. Cale was chief surgeon there, and they were very intimately associated in their respective positions.

"In June, 1911, Dr. Cale suggested to Mr. Crawford to see if he could do something about disposing of the property owned by defendant in St. Louis county north of the city of St. Louis. Crawford told him that he knew Mr. Hay, the plaintiff, and that he was an experienced clay mining man. Dr. Cale sug-

gested that Crawford see Hay, which he did.  After a preliminary talk or two with Hay, Crawford reported back to Dr. Cale and Dr. Cale suggested bringing him out to the hospital to luncheon on Saturday, July 8, 1911, which was done.  After having luncheon at the hospital, Dr. Cale, Crawford, plaintiff and a young man named Chapman—who in the meantime had succeeded Crawford as chief clerk at the hospital—got into Dr. Cale's automobile and went out into St. Louis county, and went over defendant's property.  Various plans were discussed as to the best way to develop the property, the best road to be used in hauling clay to the railroad, the feasibility of unloading a steam shovel and transporting it over a bridge on one of the county highways to defendant's property, and other details. The party then returned to the hospital and, according to plaintiff's evidence, Dr. Cale, Crawford and plaintiff went into Dr. Cale's private library and an agreement was there discussed and entered into orally, by which it was agreed that the company should borrow $3500 to be used in developing the property, with a view of selling it, and that Mr. Hay, the plaintiff, should render such services as were necessary in procuring the necessary machinery, superintending and directing the work, and get the property in such shape as to be able to sell it, and, in the meantime, handle and sell the clay that might be taken from the premises. For these services he was to be paid at the rate of $300 per month, and he was to use his office in the Commonwealth Trust Building as the office of the company and the office rent was to be divided between the company and Mr. Hay and the company was to furnish a telephone and stenographer and to pay plaintiff his necessary expenses incurred in furthering the objects of the contract.  In the event of a sale he was to be paid a commission, depending upon the amount for which the property was sold.  Dr. Cale then told Mr. Hay that it would not be necessary for him, Hay,

to see him further, but that Mr. Crawford would represent him and give him (Hay) instructions as to what Dr. Cale wanted done.

"Crawford saw Hay as often as three or four times a week and communicated with him almost daily and they made efforts to borrow the necessary $3500 and Hay entered into negotiations with various parties preparatory to securing necessary machinery and workmen, teams, etc., for developing the property. After numerous efforts to raise the money, Hay at last secured the promise of one Gibson to make the loan, but when the necessary papers were prepared and sent to Dr. Cale to be executed in behalf of the company, Dr. Cale declined to execute them and the project fell through.

"In the meantime the relations between Crawford and Dr. Cale had become strained and shortly after the failure to execute the papers for the loan, Crawford resigned as secretary. Crawford shortly thereafter brought suit against the company for his own services, as lawyer, and also sued Dr. Cale individually for legal services. Gibson sued the company for commissions for the loan and Hay sued the company for $1200 for four months salary at the rate of $300 per month.

"Plaintiff offered in evidence a typewritten document, marked Exhibit A, which purported to contain the agreement of the parties but was not signed by either of them. On this subject Crawford testified that, during the conversation on July 8th, in Dr. Cale's library, he, Crawford, made a pencil memorandum of the agreement and several days thereafter dictated it and had it writen up on a typewriter and that he showed the original of that typewritten document, or a carbon copy thereof, to Dr. Cale. However Crawford was uncertain whether the paper which was produced at the trial as Exhibit A, and offered in evidence, was the identical paper which he showed to Dr. Cale, or whether the one he showed him was tne original in-

stead of the carbon copy—the one offered in evidence was a carbon copy. He, Crawford, did not know where the original was. This paper went in over the objections and exceptions of the defendant and the defendant subsequently moved to strike out the testimony relating thereto and to withdraw the paper from the consideration of the jury, all of which the court declined to do and the defendant preserved its exceptions.

"On the part of defendant, the evidence of Dr. Cale, president of the defendant company, and his private secretary, Mr. Chapman, was to the effect that no agreement of any kind was ever entered into with Hay. They admitted the invitation to Hay to take lunch at the hospital; that he did take lunch there and the party, composed as Hay and Crawford had described it, went to the property of the American Fire Clay Company, in St. Louis county, on July 8, 1911, and went over the ground and discussed how the proposition ought to be handled, discussed the roads, the bridge and the steam shovel, but made no definite arrangement and no agreement of any sort with Hay, and nothing whatever was said about employing Hay on any salary.

"When the party returned to the hospital Hay and Crawford did not enter the hospital at all, but started down town while Dr. Cale and Chapman went into the hospital.

"The defendant's evidence further tended to show that the subject of a $300 salary, or any other salary, was never discussed between Dr. Cale and Hay and that Dr. Cale never authorized Crawford to make any sort of agreement with Hay, nor did Dr. Cale refer him to Crawford nor tell Crawford to give Hay directions of any kind. Dr. Cale also denied that Crawford brought him papers to execute in order to procure a loan and denied refusing to sign them.

"The evidence offered by defendant further tended to show that about the middle of August, 1911,

Dr. Cale, who was then away on his vacation, wrote a letter to Chapman directing him to tell Crawford that he had abandoned the idea of procuring a loan on the property. Shortly after the receipt of that letter Chapman called up Crawford and communicated that message to him. A day or two later, Hay called up the hospital and asked Chapman what he had heard from Dr. Cale and Chapman then informed him, over the telephone, that Dr. Cale said he had decided to abandon the idea of raising funds to handle the property, and, a day or two later, Chapman met Hay on the street and Hay asked him if he had heard anything further from Dr. Cale, to which Chapman replied in the negative, whereupon Hay said 'All right,' and no further conversation was had.

"Dr. Cale testified that he never saw plaintiff's Exhibit A nor a copy of it, until it was offered at the trial, and that Crawford, did not, on the 8th of July, 1911, during any conference make a pencil memorandum of any agreement nor exhibit such a memorandum to Dr. Cale, nor in his presence."

The case was submitted to the jury under proper instructions and a verdict was given for plaintiff for the full amount sued for—that is, $1200. No complaint whatever is made with respect to the instructions given or refused, nor of the conduct of the trial nor of the verdict, nor pertaining to the sufficiency of the evidence, save that the court erred in receiving in evidence the unsigned writing above referred to.

NORTONI, J. (after stating the facts).—It appears the unsigned writing introduced in evidence was typewritten and that used on the trial was a carbon copy. The witness Crawford testified that what is known both as an original and a carbon copy were made at the same time, and the carbon copy was furnished to plaintiff by him. Plaintiff approved it as setting forth the terms of the agreement, and it seems

retained this carbon copy. The original, made at the same time as the carbon copy, was neither produced nor called for, and the witness did not know its whereabouts. Because of this alone, it is urged the court erred in receiving the carbon copy in evidence, but we are not so persuaded. Such carbon copies are made by the same imprint as the original and there is essentially indited thereon the identical matter. Such being true, if the original copy accurately reveals the statements therein, the carbon copy does likewise. Therefore, carbon copies so made are regarded rather as originals and, as such, primary evidence under the rule of evidence here invoked, for they essentially partake of this quality in the process of inditing their contents. It is clear the writing was not objectionable as secondary evidence because it was a copy. [See Wright v. Chicago, B. & Q. R. Co., 118 Mo. App. 392, 94 S. W. 555; Bond v. Sandford, 134 Mo. App. 477, 114 S. W. 570.]

But though such be true, it is argued the writing was inadmissible as evidence because it was not signed, and, moreover, because it was not made contemporaneously with the agreement. However, it was not introduced as the contract between the parties, in the usual sense of that term, but rather as an admission on the part of defendant. There can be no doubt that it was inadmissible as a written contract, for it was not signed by either defendant or plaintiff. But the testimony is, that it was drawn up by Crawford, the secretary of defendant company, at the direction of Dr. Cale, its president, and in accord with the pencil memorandum made by Crawford, the secretary, at the time the oral agreement was entered into between plaintiff and defendant and under their joint supervision. It is true the pencil memorandum was not produced, and Crawford, the secretary of defendant company at the time this paper was reduced to typewriting, testifies that the typewriting was actually done some three or four

days after the agreement between the parties was entered into. Because of this it is urged the writing was inadmissible, for that it was not indited contemporaneously with the oral agreement. If the writing revealed a memorandum made by one party as if *ex parte,* without the knowledge of the other, the argument would prevail, in view of the further fact that the witness testified concerning the agreement in full without need of the writing to refresh his memory.

The cases relied upon by defendant go to the affect—first, that for a writing to be competent in evidence when made by one party concerning a transaction without the knowledge of the other, as by setting it down in a book, it must appear to have been contemporaneously made. Such is the rule of Wells v. Hobson, 91 Mo. App. 379. Second, that a writing made without the knowledge of the adverse party, and, therefore, *ex parte,* contemporaneously with the transaction in suit is not competent to be received in evidence for the purpose of consulting and considering its contents, except it be used to refresh the memory of the witness and as auxiliary to his testimony. Therefore, when it appears the witness distinctly remembers the transaction and can speak without the aid of such writing, the writing should not be received. Such are the cases of Vicksburg, etc. R. Co. v. O'Brien, 119 U. S. 99; Nat. Ulster County Bank v. Madden, 114 N. Y. 280; Meacham v. Pell, 51 Barb. (N. Y.) 65; McKelvey on Evidence, Sec. 233.

The principle thus invoked seems to relate to such memorandums and writings as are made by one party without the knowledge of, and separate and apart from, the other. This being true, it is unavailing here, for in the instant case the writing was made, according to the evidence of Crawford, the secretary of the company, by him on behalf of defendant and at the instance and direction of Dr. Cale, its president. Much of the argument proceeds, we believe, on the con-

ception that Dr. Cale is the real defendant and that Crawford, who wrote the memorandum and testified to it, is an utter stranger to the transaction. Something is said in the brief to the effect that Crawford is not a party to the suit and, therefore, it was not within his province to make an admission. It is true that Crawford is not a party to the suit and it is true, too, that this suit does not proceed against Dr. Cale, but rather against the defendant corporation of which he is president and of which Crawford was a director and the secretary at the time the writing was made. Obviously these two together could make an admission against the defendant corporation, of which they were officers. Crawford says he wrote the paper at the direction of Dr. Cale, with a view of embodying the terms of the contract between plaintiff and defendant, from the pencil memorandum he made at the time of the verbal agreement, and submitted it within three or four days to both plaintiff and Dr. Cale, the president of defendant company. His evidence, too, is that when the writing was submitted to Dr. Cale, he tacitly approved it by suggesting that Crawford should put it in the form of a letter and transmit it to plaintiff for his signature. This, it seems, was not immediately done, and plaintiff continued to retain the copy furnished to him by Crawford, awaiting the signature of defendant through its president, Dr. Cale. In the meantime, Dr. Cale went away on his vacation and wrote a letter to Chapman, his private secretary, instructing him to notify plaintiff that he had abandoned the whole project. Though it be this writing was actually put on paper three or four days after the agreement, it was competent in evidence as an admission against defendant corporation, tending to prove the arrangement between the parties if Dr. Cale saw and approved it as stating the terms of the agreement. Obviously an admission of the adverse party is com-

petent to be received in evidence without regard to the fact that it was not made contemporaneously with the agreement constituting the subject-matter of the suit. [See Wigmore on Evidence, Sec. 1048, *et seq.*]

The mere fact that Dr. Cale denied he directed Crawford to reduce the alleged contract to writing and denied, too, that it was ever submitted to him for approval and that he ever approved it is not sufficient to render the paper incompetent in evidence as an ad-mission against defendant company, for the evidence of Crawford is directly to the contrary—that is, that he, the secretary of the company, acting under the direc-tions of the president drew up this paper and submit-ted it to the president who approved of its contents, but with the suggestion only that it might be better to put it in the form of a letter to plaintiff for him to accept. Of course, the weight and the value of the testimony to-gether with the credibility of the witnesses was a ques-tion for the jury.

The judgment should be affirmed. It is so ordered. *Reynolds, P. J.,* concurs. *Allen, J.,* not sitting.