CHRISMER ET AL., APPELLANTS, *v.* CHRISMER, EXR., APPELLEE.

(No. 132—Decided November 20, 1956.)

*Mr. Walter H. Earley,* for appellants.
*Mr. John E. Ernst,* for appellee.

WISEMAN, J.   This is an appeal on questions of law from a judgment rendered in favor of the defendant by the Common Pleas Court of Preble County, in an action instituted by the payees of an instrument, claimed to be a promissory note, against the executor of the estate of Francis M. Chrismer, deceased, the maker.   The payees, Vern Chrismer and Marie Chrismer, were the son and daughter-in-law, respectively, of Francis M. Chrismer, deceased, who was also known as F. M. Chrismer.

The instrument in question was as follows:
"$6,000                                                  April 17, 1951.
  "1 year after date I promise to pay to the order of Vern or Marie Chrismer six thousand dollars dollars with interest at per cent per annum at 4% for labor and services for the value received.   Years 1936-37-38-39-40-41.
"No....... Due......          [Signed]    F. M. Chrismer."
There are no credits or endorsements thereon.   Upon the

rejection of the claim by the executor, the suit was duly instituted. The action was tried to the court without the intervention of a jury.

The petition was the usual short form. The amended answer admitted the presentation and rejection of the claim, followed by a general denial. Further answering, the defendant alleged: (1) That said note is a carbon copy; (2) that the decedent did not make and deliver the note; (3) that the decedent was not indebted to the plaintiffs; and (4) that no consideration or value was received by the decedent for the execution of said note.

The factual situation as presented by the evidence is as follows: The decedent, Francis M. Chrismer, the father of Vernon Chrismer, owned a large farm which the son operated as a tenant from 1936 to 1942. The father was also in the business of cutting hedge posts and selling same. In addition to operating the farm, the son and daughter-in-law were to receive one thousand dollars per year from the father for cutting posts and logs. This arrangement began in 1936 and continued until 1942, but during these years the father failed to pay as agreed. On April 17, 1951, each owed the other a sum of money. What transpired on this day is found in the testimony of the son on cross-examination, and is as follows:

"Q. At the time that this instrument here known as plaintiff's exhibit 1 was executed, I'll ask you to explain to the court what the circumstances were surrounding the execution of this instrument? A. I went down there that day, Dad wanted to know if I could give him a couple hundred on the cattle and I said I guess I could. I said, 'Dad, I don't see any reason why I should give you money when you owe me, you have owed me all these years for what I worked down on the farm.' He said, 'I got to have $200 and I'll give you a note and you give me a note for what you owe, don't put it in the bank and I won't put yours in' and we didn't, that's the way it was.

"Q. Is this the note your father executed that day? A. That's a duplicate of the original, yes. There's another one just like that, I'll admit that sure.

"Q. How was this note here executed, Mr. Chrismer? A. By carbon paper.

"Q. And this is a carbon copy? A. Well, I wouldn't say carbon copy, I'd say it was a duplicate of the original.

"Q. In other words then when this note was executed * * *. A. Only two notes made.

"Q. This one and the one on top of the carbon sheet of paper? A. That's right.

"Q. Your father wrote this note out himself? A. No, I wrote that, he wrote his name.

"Q. He signed his name? A. That's right.

"Q. And what happened to the note, the original? A. I would like to know, too.

"Q. Did you keep that note? A. No, I never had it, Dad had that.

"* * *

"Q. Is it your normal procedure to execute promissory notes in duplicate? A. That was Dad's idea. I don't know, he wanted me to write out two. I had been delivering seed corn, I had a seed corn book in my pocket. I said rather than make out two I'll put a carbon paper between them, he said, 'I want one and you keep one.' I also had the carbon copy of the note you got of mine.

"* * *

"Q. Did your father take the original of this note? A. He had it in his notebook, a notation made in his own notebook.

"Q. He had it in his possession? A. That's right."

The son also testified as follows:

"Q. I'll hand you what has been marked for identification as plaintiff's exhibit 1 and ask you what that is? A. Promissory note.

"Q. Would you please read it? A. April 17, 1951. One year after date I promise to pay to the order of Vern or Marie Chrismer six thousand dollars at 4% interest for labor and services for the years 1936, '37, '38, '39, '40 and '41.

"Q. Whose signature appears there? A. F. M. Chrismer.

"Q. Are you acquainted with your father's signature? A. I am.

"Q. Is that his signature? A. Definitely."

Plaintiff's exhibit 1 is the alleged promissory note on which suit was brought.

Defendant objected to the introduction of the note on the ground that it was a carbon copy; that plaintiffs failed to lay a proper foundation for its introduction under the best evidence rule. No attempt was made by the plaintiffs to comply with the requirements of the best evidence rule, the contention of the plaintiffs throughout being that the instrument introduced was not a carbon copy, but was a duplicate original, and that its admission in evidence did not violate the best evidence rule. The court overruled the objection of defendant and admitted the note in evidence.

The court, in rendering judgment for the defendant, found "that the instrument offered by the plaintiffs as a binding promissory note, is but a copy, and that same is not a negotiable instrument; that said plaintiffs did not comply with the best evidence rule, and therefore plaintiffs' petition should be dismissed." Plaintiffs' sole assignment of error is based on this finding.

The trial court found the instrument to be a carbon copy of the original and, under general contract law, it was not admissible without first laying the foundation for its introduction under the best evidence rule, and, further, that the instrument did not meet the requirements of the Negotiable Instruments Act. The appellant contends that the trial court erred in refusing to consider the note as part of the evidence in determination of the issues when it came to render judgment in the case.

First, is the instrument a negotiable instrument within the meaning of the Negotiable Instruments Act? We think it is not. Without question, the instrument is but a carbon copy of an original. The signature is made by imprint of the carbon paper. In our opinion the signature of the maker must be an original signature to be genuine and legal within the meaning of the Act. Section 8106, General Code, sets forth the requirements of a negotiable instrument, the first being that "it must be in writing and signed by the maker or drawer." Section 8123, General Code, provides that no person shall be liable on an instrument whose "signature does not appear thereon." Section 8289, General Code, defines a negotiable promissory note, and one of the requirements is that it be "signed by the maker."

In our opinion, a carbon copy of an instrument, which bears a carbon copy of what purports to be the signature of the maker, does not meet the requirements of the statute.

Finding no reported opinions on this proposition, it becomes a matter of first impression. In our opinion, the execution of a duplicate original negotiable promissory note is not contemplated by the Act, and, further, to do so would not be a sound trade practice or usage. We are cognizant of the fact that in modern trade practice carbon copies of negotiable promissory notes are made and retained for limited record purposes. However, in no sense can a carbon copy meet the statutory requirements of negotiability.

Since the instrument in question does not meet the test of a negotiable promissory note, we must consider its admissibility from the view point of a non-negotiable promissory note. Promissory notes are divided into two classes: Negotiable and non-negotiable; the former must comply with the Negotiable Instruments Act; the latter need not comply. 29 Ohio Jurisprudence, 844, Section 27.

In resolving this issue we leave the field of statutory law and enter the field of general contract law. Under the rules of evidence controlling the admission of written contracts, was this instrument admissible without first laying the foundation for its introduction under the best evidence rule? Here again we find no reported opinion on this precise question. In 21 Ohio Jurisprudence (2d), 286, Section 270, it is stated:

"Copies of written documents and instruments are merely secondary evidence, and except in the case of public documents or records which the public has the right to inspect, and which cannot without inconvenience be removed from their place of custody, copies are as a general rule inadmissible if the originals are available, unless proper foundation has been laid for their admission, or unless the admission thereof is provided for by statute."

On page 287, Section 271, *ib.*, the text is as follows:

"While a few cases have admitted carbon copies of other written instruments without requiring a foundation to be laid explaining the absence of the originals, the weight of authority is to the effect that some foundation must be laid to account for

the absence of written instruments other than letters, before carbon copies thereof will be receivable.''

In the footnote thereto reference is made to 51 A. L. R., 1498, where is found an annotation on the subject. On pages 1501 and 1502 are listed several cases, two of which are cited by appellants, which hold that carbon copies of written instruments may be admitted without requiring a foundation to be laid explaining the absence of the originals. In *Hay* v. *American Fire Clay Co.* (1913), 179 Mo. App., 567, 162 S. W., 666, which involved a contract of employment, an unsigned carbon copy of a contract of employment, which was never executed, was admitted. However, it was not admitted as the contract between the parties in the usual sense of the term, but as an admission against interest. The only case which supports appellants' contention, but which unquestionably is the minority view, is *International Harvester Co.* v. *Elfstrom* (1907), 101 Minn., 263, 112 N. W., 252, 12 L. R. A. (N. S.), 343, 118 Am. St. Rep., 626, 11 Ann. Cas., 107, which involved a written agreement to purchase a binder. A carbon copy, including the imprint of the signature made by carbon paper, was admitted as the original.

In 32 Corpus Juris Secundum, 749, Section 821, is found this statement:

''In the case of duplicate originals or counterparts each duplicate original or counterpart is admissible as primary evidence. The rule is particularly applicable to copies produced by the same mechanical operation, such as carbon, impression, printing press and manifold copies. If, however, some but not all carbon copies are signed, the unsigned copies become secondary evidence.''

However, at the end of the explanatory text, under the rule, on page 751, is found this statement:

''A distinction has been drawn with respect to instruments requiring signatures, such as contracts, it being considered that where several carbon copies are made all the copies are originals until signed, and when one is signed the other become copies with the signatures missing. Such unsigned copies are inadmissible in the absence of proof that the original is not obtainable * * *.''

The text in 20 American Jurisprudence, 380, Section 427, deals with duplicate originals, and is as follows:

"The rule which excludes evidence of copies of documents where the documents themselves are available as proof does not apply to documents and writings which are executed in duplicate or multiplicate form. It is well settled that where a writing is executed in duplicate or multiplicate, each of the parts is the writing which is to be proved, because, by the act of the parties, each is made as much the legal act as the other. Each part of a document so executed is regarded as the primary evidence of its contents, and the original need not be produced. Thus, the different impressions of a writing produced by placing carbon paper between sheets of paper and writing upon the exposed surface are, according to the prevailing view, duplicate originals, and may be introduced in evidence without accounting for the nonproduction of the original, unless it appears that the parties did not intend such papers to operate as the original evidence of the matters therein contained."

The principle stated contemplates the separate execution of each copy. This court has examined all the cases cited in the footnote in support of the text, and does not find any of the cases to be applicable. The case of *Friedlander* v. *Schlesinger,* 29 Ohio Law Rep., 97, decided in 1929 by the Court of Appeals for Cuyahoga County, is not in point. In that case, suit was brought on an unsigned promissory note. It appears that the draft was written in duplicate and on a copy the signature of the drawer appeared. The first paragraph of the syllabus is as follows:

"The infirmity of a draft which is unsigned by the drawer cannot be cured by evidence of the existence of a duplicate or carbon copy upon which the name of the drawer appears."

That case is distinguished from the case at bar on the facts. However, it supports the contention of appellee that a promissory note, to have any legal effect, must bear the original signature of the maker. The carbon copy of the note in question was not admissible without first laying the foundation for its introduction under the best evidence rule.

As heretofore stated, the plaintiff tried this case on the theory that the carbon copy of the note was a duplicate origi-

nal. The court admitted the note into evidence over defendant's objection. At the close of plaintiff's case, defendant renewed his objection and moved for dismissal, which was overruled. After the defendant presented his case, and at the close of all the evidence, defendant renewed his motion for dismissal on which the court reversed its ruling. In its written opinion, the trial court ruled the note was inadmissible and carried this ruling into the judgment entry, rejected the note as evidence and, having done so, dismissed the plaintiff's case. At the time of submission of the case, the note was admitted into evidence and was a part of the case. At this juncture, there was no reason for the plaintiff to lay the foundation for its introduction under the best evidence rule. Had the court refused to admit the carbon copy of the note, it would have been incumbent on the plaintiff then to proceed to lay the foundation for its introduction. On the state of the record, plaintiff was under no obligation to do so. In admitting the note into evidence, the court induced the plaintiff to rely on its admission as a part of the evidence. Upon rejecting the note as evidence in its final determination of the issues on the merits, the trial court should have granted plaintiff a new trial. In overruling plaintiff's motion for new trial the court committed reversible error.

The judgment is reversed, and the cause is remanded for a new trial.

*Judgment reversed.*

MILLER, P. J., and HORNBECK, J., concur.