[S. F. No. 11458. In Bank.—February 11, 1927.]

In the Matter of the Estate of J. GOODWIN THOMPSON, Deceased. AGNES BOYD THOMPSON, Respondent, v. GAIL WATKINS, Appellant.

[1] ESTATES OF DECEASED PERSONS—WILLS—OPPOSITION TO PROBATE OF—MINOR HEIRS—NOTICE.—Minor children who are legatees under a will and residents of the county in which a petition for its probate is filed should be served with copies of written grounds of opposition to the probate of the will, under the provisions of section 1312 of the Code of Civil Procedure.

[2] ID.—UNDUE INFLUENCE—CONFIDENTIAL RELATIONS—RULE.—A confidential relationship and opportunity to influence a testator are not sufficient to overthrow a will, but there must be proof of the exercise of that influence to actually overthrow the mind and will of the testator at the moment of executing the will.

[3] ID.—EXECUTION OF WILL—PARTICIPATION OF LEGATEE.—The reply, "All right," of a legatee, made to the testator's statement that he intended to make a change in his will, is no evidence of participation of the legatee in the making of the will.

[4] ID.—NATURALNESS OF WILL.—A will is not unnatural in making a modest provision for the support of a woman who had worked for the testator for a number of years in accumulating his property, without salary, and to whom he was to be married, where the testator had no one depending upon him, his mother being aged and having sufficient for her support, and he having left the bulk of his estate to minor children of his brother and sister.

[5] ID.—WILL CONTEST—EVIDENCE.—In a will contest, the jury is not at liberty to decide, without evidence, that a legatee has not narrated all of a conversation about the will and that more was said upon the subject; nor has it the right to infer from the fact that the decedent gave a diamond ring to said legatee she importuned the gift and that if she importuned the gift she also importuned the execution of the will.

1. See 26 Cal. Jur. 650.

4. Unnatural or unreasonable character of will as evidence of undue influence, notes, 7 Ann. Cas. 894; 6 L. R. A. (N. S.) 202; 22 L. R. A. (N. S.) 1024. See, also, 28 R. C. L. 149; 26 Cal. Jur. 687.

[6] ID.—EXISTENCE OF WILL—DECLARATIONS OF DECEDENT—ADMISSI-
BILITY OF.—In a will contest, declarations of the testator, offered
for the purpose of showing that he made the will, are admissible.

(1) 40 **Cyc.**, p. 1263, n. 74.  (2) 40 **Cyc.**, p. 1144, n. 53, p. 1145,
n. 54, p. 1148, n. 72, p. 1149, n. 79.  (3) 40 **Cyc.**, p. 1165, n. 87.
(4) 40 **Cyc.**, p. 1079, n. 89, p. 1145, n. 55.  (5) 4 **C. J.**, p. 964,
n. 80; 23 **C. J.**, p. 52, n. 80; 40 **Cyc.**, p. 1164, n. 80.  (6) 38 **Cyc.**,
p. 1603, n. 59; 40 **Cyc.**, p. 1313, n. 14, 15.

APPEAL from a judgment of the Superior Court of Ala-
meda County.  M. C. Chapman, Judge *pro tem.*  Reversed.

The facts are stated in the opinion of the court.

Casper A. Ornbaun, Preston & Duncan and Albert E.
Carter for Appellant.

Philip M. Carey, Law T. Freitas, Sullivan & Sullivan and
Theo. J. Roche and Henry G. Tardy for Respondent.

FINCH, J., *pro tem.*—The record in this case does not
show whether the minor beneficiaries under the will referred
to in the following opinion, who were residents of the county
in which the proceeding was instituted, were served with
a copy of the written grounds of opposition to the probate
of the will or that they appeared in the proceeding.  The
cause was tried by a judge *pro tempore*, agreed upon in writ-
ing by the proponent of the will and the contestant, it not
appearing that the said minor beneficiaries were parties to
such agreement.  An interesting question has arisen as to
whether the agreement of only a part of the persons inter-
ested in the estate is sufficient to give the judge *pro tempore*
jurisdiction to try the cause.  It is not necessary, however, to
decide this question, because the judgment must be reversed
on other grounds.

Appellant contends that the court was without jurisdiction
to render judgment because of failure to serve such minor
heirs.  This point was not raised in the trial court.  If the
objection had been made in the trial court, that court doubt-
less would have made an appropriate order bringing in the
minor beneficiaries, and such beneficiaries should be brought
in before the retrial of the cause.  The following parts of

the opinion of the district court of appeal, written by Mr. Presiding Justice Langdon, are adopted as the opinion of this court:

"This appeal is by the defendant Gail Watkins, who was a beneficiary under a purported will of Dr. J. Goodwin Thompson, which will she produced and offered for probate. The mother of Dr. Thompson, Agnes Boyd Thompson, contested the probating of this will, alleging as grounds for the contest, first, that Dr. Thompson was mentally incompetent at the time of the making of the purported will; second, that it was not entirely written, dated and signed in the handwriting of the testator, and, third, that if said will were executed by decedent, its execution was procured by fraud and undue influence on the part of Gail Watkins, the proponent of the will.

"During the trial the issue of mental incompetency was withdrawn, testimony directed to that issue was stricken from the record, and the case went to the jury upon the other two grounds of contest.

". . . The purported will . . . reads as follows:

"'S. P. Limited No. 2,
"'Sept. 26/23.

"'This is my last will & Testament.

"'My residence and grounds between Webster and Franklin Sts. to go to Gail Watkins also the mortgage on her Father's ranch. This is done for services rendered & her close attention to duty. The rest of my property after all debts are paid to go equally to Grace's & Bobs (my sister & Bro) children on the youngest becoming of age. If any other proven claimant, the sum of $10.

"'I hereby appoint Gail Watkins my Guardian.

"'DR. J. GOODWIN THOMPSON.'

"It is apparent that a judgment declaring the foregoing document not to be the last will and testament of Dr. Thompson and denying the petition to have it admitted to probate affects, adversely, not only the rights of Gail Watkins, but the rights of the nieces and nephews of the testator, the residuary legatees. The petition alleges 'that the names, ages and residences of the legatees and devisees of said deceased, so far as known to the petitioner are: Boyd Eubank, aged about 13 years and Rule Eubank, aged about 11 years, chil-

dren of Grace Eubank, a sister of said deceased, residing with their mother at 1027 59th Street, Oakland, California,' etc.

[1] "The sister of deceased, Mrs. Grace Eubank, was a witness for the contestant, and stated that she had two minor children and resided in Oakland, California. These minor children, being legatees under the will and residents of the county in which the petition for its probate was filed, should have been served with copies of the written grounds of opposition to the probate of the will, under the provisions of section 1312, Code of Civil Procedure. There is no showing in the record of an appointment of a guardian to represent the interests of these minors under the provisions of section 372 and 373, Code of Civil Procedure. . . .

"This case well illustrates the possibilities of injustice being done through the failure to have the interests of minors legally represented. Here the proponent of the will was not a blood relative of the deceased. The will left her only a portion of the estate, the balance to minor nephews and nieces of testator. The aged mother of testator, as his only heir at law, was the contestant. The mother of two of the minors who were legatees under the will and the father of the other two minors, also legatees, sister and brother respectively of decedent, testified for the contestant and assisted to their utmost in overthrowing the will and depriving their minor children of their rights thereunder. These two witnesses were the natural guardians of these children and their desires and interests seem to have been opposed to the interests of these children. . . .

"As we have indicated, the case went to the jury upon two questions, one was the undue influence exercised upon testator. After the contestant had rested her case, the attorney for the proponent of the will made a motion for nonsuit as to the issue of undue influence, calling attention to the absence of any evidence in the record that any undue influence had been exerted to cause the making of the will. The testimony was undisputed that proponent had known decedent for several years, during most of which time she assisted him in his office as office nurse. She was engaged to be married to him, according to her testimony, and had drawn no salary for her services in connection with the doctor's business. While he was in New York in 1922 he made and executed a will substantially like the one offered for probate.

There is no evidence that Miss Watkins exercised any control over this testamentary act. In September, 1923, Dr. Thompson went to Chicago. Miss Watkins and her sister accompanied him to the train. Both women testified that the doctor stated to Miss Watkins that he was going to mail her another will; that he wished to make a slight change, as he had failed to appoint any one to take charge of his estate in the event of his death. Within a day or two after his departure Miss Watkins received the document in controversy through the mails. It was substantially the same as the prior will, with the addition of the provision for a 'Guardian.' It was accompanied by a letter. Both were written upon the stationery of the railroad company. This will was placed by Miss Watkins in the doctor's safe, together with the former will made in New York. During his last illness the doctor asked for the two wills, re-read them and tore up the earlier one and handed the other back to Miss Watkins, and she again placed it in the safe.

[2] "True, contestant established the existence of a confidential relationship, and probably—to present the matter most strongly in her favor—she established the ability on the part of Miss Watkins to influence the doctor by reason of his affection for her, as evidenced by his numerous letters over a period of years. But these elements are not sufficient without a showing of actual participation by the beneficiary in the making of the will. (*Estate of Baird,* 176 Cal. 381 [168 Pac. 561]; *Estate of Anderson,* 185 Cal. 700, at pages 707 et seq. [198 Pac. 407]; *Estate of Bryson,* 191 Cal. 521, 541 [217 Pac. 525]; *Estate of Wall,* 187 Cal. 50 [200 Pac. 929]; *Estate of Clark,* 170 Cal. 418 [149 Pac. 828]; *Estate of Lavinburg,* 161 Cal. 536 [119 Pac. 915].)

"The court, in denying the motion for nonsuit, gave as its reason that Miss Watkins was a stranger to the blood of the testator; that she benefited by the will; that a confidential relationship existed between her and the testator, and further said: 'So far as I now recall the testimony, there was some participation by Miss Watkins in the preparation of the will. If I am not mistaken, she discussed with him the question of making a will, on the very day that this will is said to have been executed and, as I recall it, at the 16th street depot, in this city, when he was about to take a train

for Chicago, I believe, or some place in the East. Now that is some evidence of participation. It may be slight.' The evidence referred to has been mentioned heretofore. To be exact, it is as follows: 'He (decedent) said, "I am going to mail another will to you." He said, "I want to make a little change in the other one," and I said, "All right," and he said, "I failed to appoint anyone to take charge of my estate in the other will in case of my death." ' The sister of Miss Watkins, who was present, gave substantially the same account of this conversation.

[3] "This reply of 'All right' made by Miss Watkins to the doctor's statement that he intended to make a change in his will, we think, was no evidence of participation on her part in the making of the will.

[4] "The respondent, in response to this attack upon the judgment, argues that the undue influence was shown by circumstantial evidence, instancing what she terms the unnatural provisions of the will; that the testator was not in good health; that a confidential relation existed between the testator and Miss Watkins. While unnatural provisions in a will do not destroy its potency as a testamentary act if the will was freely and voluntarily executed by a testator of sound and disposing mind, it might be pertinent to remark that in this case the provisions of the will do not seem as unnatural as respondent contends. The only heir at law of the doctor was his mother, who was 84 years of age and who had sufficient property for her support during her life. His brothers and sisters were, apparently, of full age and had families of their own. He left the bulk of his estate to their minor children. Gail Watkins had worked with him in accumulating his property during a period of four or five years and, according to her testimony, had received no salary. His numerous letters to her show his constant thought of her and her welfare. His statements to others indicated his appreciation of what he considered her untiring service in his behalf, and the will itself expresses this idea. According to the testimony of Miss Watkins and of others she and the doctor were to have been married. In view of all these facts, it does not seem unnatural that the doctor, having no one dependent upon him, should make a modest provision for the support of this woman who was apparently his most confidential and closest associate.

"While it is in evidence that the doctor had some weakness or disease of the heart which caused illness from time to time, there is nothing to indicate that his mind and will were impaired. . . . All the authorities herein cited emphasize the rule that a confidential relationship and opportunity to influence testator are not sufficient to overthrow a will, but that there must be proof of the exercise of that influence to actually overpower the mind and will of the testator at the moment of executing the will.

[5] "Respondent urges that the jury was at liberty to decide that Miss Watkins did not narrate all the conversation about the will and that more was said upon that subject. We know of no rule of law by which a jury may thus supplement the evidence by its own imaginings.

"Miss Watkins also testified that the doctor had given her a diamond ring on one occasion and respondent makes much of this, saying that the jury had a right to infer (without any evidence to that effect) 'that she had importuned this gift from him and if she importuned the diamond ring . . . she also importuned the execution of a will. . . .' Cases are not to be so manufactured by juries, and the necessity of resorting to inference upon inference against the evidence in the record in order to warrant the submission of this issue to the jury, demonstrates the error of the ruling upon this question, and that the motion for nonsuit should have been granted.

"Although the appellant points out that the two special verdicts submitted to the jury were inconsistent, one being that the will was not written, dated and signed by the testator and the other being that it was procured by undue influence, it is not necessary to go into that objection, but for the purposes of this appeal we may take the position of the respondent—that if the evidence sustains the verdict upon either issue, the judgment should stand. . . . Conceding that there was some testimony for the contestant upon this [the former] issue which would warrant a finding by the jury in her favor, certain erroneous rulings upon evidence, relating to this issue, which must have prejudiced greatly proponent's case, demand a reversal of the judgment, even though it be considered as based on this issue alone.

[6] "The court refused to permit proponent to state the conversation she had with testator upon his return from Chi-

cago; which conversation it is claimed would have shown the existence of the will. She was asked: 'What, if any, conversation did you have with Dr. J. Goodwin Thompson upon his return after you went to the train with him on September 26, 1923, about the will?' This question was objected to and proponent's attorney stated that its object was to show that the will was in existence and that the doctor saw the will; that it was not an attempt to prove the contents of the will or any of the circumstances of the will. The court refused to admit this testimony on the ground that it was hearsay.

"During the examination of proponent's sister, the court refused to admit testimony regarding remarks made by testator upon the subject of his will to establish the fact that a will was in existence. These rulings are in direct conflict with the cases of *Estate of Thompson,* 185 Cal. 763, 767 [198 Pac. 795]; *Estate of Sweetman,* 185 Cal. 27 [195 Pac. 918]. Whatever doubt may have existed in the past about the application of the rule of these cases where the issue is forgery, is set at rest by the recent case of *Estate of Morrison,* 198 Cal. 1 [242 Pac. 939], in which our Supreme Court considers most carefully the authorities upon all phases of the general subject and concludes with the adoption of the rule in the case of *Hoppe* v. *Byers,* 60 Md. 381, which is summarized as holding that declarations of a testator that he had made a will and had named therein the proponent thereof as his sole beneficiary were admissible in evidence as tending to show the existence of such a document prior to the death of the decedent. The only real issue between the parties in this action was the genuineness of the purported will—whether or not it was written by the testator. The issue in the Morrison case was the same as the issue upon which the proponent in this case sought to introduce the excluded testimony, i. e., forgery. The relevancy to that issue of declarations of the testator regarding the disposition of his property is discussed in the case of *Adams* v. *Ristine,* 138 Va. 273 [31 A. L. R. 1413, 122 S. E. 126, 135], wherein it is said:

" 'At the request of the contestants and over the objection of the proponents, the court gave the following instruction: "The court instructs the jury that statements of Lewis M. Adams as to how he intended to dispose of his

property at his death go only to the question of the probability or improbability of his making the disposition of his property set forth in the alleged will, and does not affect the question of whether said alleged will is in the genuine handwriting of Lewis M. Adams or not.''

" 'It is said by counsel for contestants that ''This instruction was intended to tell the jury that if they believed that the alleged will was not in the genuine handwriting of Lewis M. Adams, any statements made by him before his death, as to how he intended to dispose of his property, would not be sufficient to justify a verdict in favor of the proponent of the alleged will.''

" 'But the instruction does not express that intention. It says that the statements of the testator as to the intended disposition of his property do not affect the question of whether or not the will was in the handwriting of Lewis M. Adams, when in fact it might have a very serious effect. If the jury thought that the evidence as to the execution of the will left the question in doubt, they would probably give very serious consideration to the statements of the testator as to his intended disposition of his property.

" 'In *Samuel* v. *Hunter's Ex'x.*, 122 Va. 636 [95 S. E. 399], it is said that ''Such declarations, standing alone, are not admissible as direct evidence to prove or disprove the genuineness of the will; but that in all cases where its genuineness has been assailed by other proper evidence, the declarations are admissible as circumstances, either to strengthen or weaken the assault, according to their inconsistency or their harmony with the existence or terms of the will''—thus showing not only the admissibility of such testimony, but its influence.

" 'The instruction was at least misleading, if not positively erroneous, and it was error to give it.'

"In the instant case, various declarations of the testator bearing upon the genuineness of the will, in addition to those just discussed, were either disallowed, or, if admitted, deprived of their force, so far as the genuineness of the will was concerned, by the instructions of the court.

"There are numerous other objections urged by appellant regarding rulings upon the admission of evidence

of more or less merit and importance, but it is unnecessary to discuss them all."

The judgment is reversed.

Richards, J., Waste, C. J., Shenk, J., and Seawell, J., concurred.

Preston, J., and Langdon, J., being disqualified, did not participate in the foregoing opinion.