[No. 21385. Department Two. January 3, 1929.]

GEORGE F. BROWN, *Respondent*, v. NELLIE E. JONES,
*as Executrix, Appellant.*[1]

*Crass & Hardin,* for appellant.
*McMaster, Hall & Schaefer,* for respondent.

PARKER, J.—The plaintiff, Brown, commenced this
action in the superior court for Clark county, seeking
recovery of all of the property of the estate of Mary E.
Thompson, deceased, after payment of her debts, fu-
neral expenses and administration expenses.

The theory upon which Brown seeks recovery is that
he is entitled to the remaining property of the estate,
in performance of a contract entered into by him with
Mary E. Thompson, by which he was to care for the
cemetery lot in which her husband was buried, and in
which she was also finally to be buried, such care to be
thereafter continued by him, in consideration of which
she was to leave all of her property to him by her will.

[1]Reported in 273 Pac. 194.

The action was commenced upon a claim filed by Brown with the executrix and rejected by her, and was tried by the court, sitting with a jury; counsel upon both sides proceeding upon the theory that it was properly triable as a jury case. The trial so had resulted in verdict and judgment in favor of Brown, as prayed for, from which Mrs. Jones, the executrix, has appealed to this court.

A reading of this record, including the evidence as abstracted by counsel for appellant, convinces us that the jury could have well believed the controlling facts to be in substance as follows:

About the first of May, 1920, Mary E. Thompson, an aged widow, lived in Clark county, in a rural district, in a small home owned by her. Respondent, Brown, and his wife, lived very near Mrs. Thompson, and in a neighborly manner rendered her many acts of kindness. While other neighbors did likewise, the Browns seem to have been then her most intimate friends and neighbors. Mrs. Thompson's husband had died some five years prior to that time, and had been buried in a lot owned by them situated in a neighboring cemetery. Mrs. Thompson's worldly possessions, then and thereafter up to the time of her death, were of comparatively small value.

About May 1, 1920, Brown and Mrs. Thompson entered into an oral agreement, by which he was to care for the cemetery lot and the grave of her husband in a proper manner until the time of her death, when she was to be buried therein by the side of her husband, and Brown was to thereafter continue the care of the lot and both graves, in consideration of which she agreed that she would, upon her death, leave to Brown, by will, all of her property, subject to such debts and expenses of administration as might be lawfully chargeable against her estate.

Thereafter, on May 4, 1920, Mrs. Thompson made her will in due form, providing, so far as we need here notice its language, as follows:

"I direct my executor hereinafter named, as soon after my death as practicable, to pay my funeral expenses, the expenses of my last sickness and any other debts which I may owe at the time of my decease, and I especially direct that he procure and erect over my resting place a monument as nearly similar as possible to that over the resting place of my beloved husband, Frances A. Thompson, beside whom I desire to be placed; and for the carrying out of all these directions, I authorize and empower my executor to convert into money sufficient of my personal or real property to provide for the same.

"I give, devise and bequeath unto George F. Brown, my neighbor, all the rest, residue and remainder of my property of every character wheresoever situated."

On April 27, 1926, Mrs. Thompson made another will, providing, in so far as we need here notice its language, as follows:

"SECOND: I direct that my executrix erect over my resting place a monument as nearly similar as possible to that over the resting place of my beloved husband, Frances A. Thompson, beside whom I desire to be placed and to use necessary proceeds of my estate to carry out these provisions.

"THIRD: I have no children. I give and bequeath unto my friend, Mrs. J. E. Rogers, one pair of feather pillows.

"FOURTH: I give, devise and bequeath unto Nellie E. Jones of Vancouver, Washington, all the rest and residue and remainder of my property of every character wheresoever situated.

"FIFTH: I nominate, constitute and appoint Nellie E. Jones sole executrix of this my last will and testament,

. . .

"EIGHTH: I hereby revoke any and all wills heretofore made by me."

On October 2, 1926, Mrs. Thompson died, having continued up to that time to reside in her home above mentioned. Prior to entering into the agreement between Brown and Mrs. Thompson about May 1, 1920, he had cared for the cemetery lot and grave of her husband, and thereafter he continued to do so in a proper manner in compliance with that agreement up until the death of Mrs. Thompson. He declares a willingness, manifestly in good faith, to continue to do all he agreed to do. Mrs. Thompson was buried in the lot beside her husband.

██ The making by Mrs. Thompson of the will of May 4, 1920, was proven by the testimony of a witness who was present at the time that will was made and by his production of a carbon copy of that will, testified to by him as being an exact copy thereof. While it was conceded that Mrs. Thompson made a prior will, it was necessary for Brown to prove the time of the making of that will and its contents. There was testimony of another witness that Mrs. Thompson had, some two years prior to her death, said she had destroyed, or was going to destroy, her former will. That will could not be found after her death.

It is contended in behalf of Mrs. Jones, the executrix under the last will, that the carbon copy of the will of May 4, 1920, was not admissible in evidence. It seems clear to us that it was admissible, together with the oral testimony, as secondary evidence of the making and the contents of the lost or destroyed will, and also, under the circumstances, as in some measure confirmatory of the alleged contract between Brown and Mrs. Thompson. *Worden v. Worden,* 96 Wash. 592, 165 Pac. 501; *Swingley v. Daniels,* 123 Wash. 409, 212 Pac. 729.

██ It is contended that the evidence does not support the verdict and judgment, and that the trial court

erred in refusing to so decide, as was requested by appropriate motions made in behalf of Mrs. Jones, the executrix, and in this connection it is argued that, to sustain a judgment of recovery in a case of this nature, it must be supported, not only by a preponderance of evidence, but by evidence clear and convincing.

Conceding this to be the rule applicable to a controversy of this nature, we are nevertheless of the opinion that the judgment here questioned was supported by such evidence. Whether this controversy be viewed as one triable as a pure law action, by the court sitting with a jury, or viewed as one in the nature of specific performance, triable by the court without a jury, we are of the opinion that the evidence calls for an affirmance.

The judgment is affirmed.

MAIN and FRENCH, JJ., concur.

FULLERTON, C. J. (dissenting) : I cannot agree with the majority opinion. Contracts of the sort here in question are not, and should not be, favored by the courts. They offer an opportunity for unrighteous gain, thus arousing avarice, the tendency of which is to promote perjury. Such contracts should not be enforced unless they are definite and certain in their terms, and are supported by clear and convincing testimony. In my opinion, the record here is faulty in each of these particulars.

I think the contract void for want of certainty, because it fixes no time during which the promisor is to continue in the care of the grave of the donor. The majority seem to assume that he is to care for it in perpetuity. But this construction renders the contract void, because it makes a contract incapable of performance by the promisor. It cannot be a contract to continue the care for a reasonable time, because that doctrine has no application to contracts of this sort.

The rule of law which allows a reasonable time for the performance of a contract, where no time is fixed in the contract itself, has in it something of equitable consideration, and is applied to prevent injustice, and then only where it is apparent that its application is not contrary to the evident intent of the contracting parties.

It is, moreover, only applied to contracts which in themselves are capable of a completed performance, and applies then to the time for performance. It is not applied to instances where its application is necessary to make a completed contract. To so apply it, is to make a new contract for the parties. In this instance, if the opinion of the majority be correct, the promisor has earned his stipend if he has continued in the care of his donor's grave for a single instant of time after her burial.

On the second question, since the majority have not discussed the evidence, I do not feel that I need do so. It is sufficient to say that, in my opinion, the evidence leaves the question in doubt whether the contract contended for was entered into, much less that it was proven by clear and convincing evidence.

I am aware that the majority stress the fact that this was a small estate, and that the promisor receives no more than is a just compensation for his services.

But I think this beside the question. The majority are announcing a general rule, applicable alike to all instances of the same kind; instances where there is a large amount of property, as well as those where the property is of insignificant value. Nor do I think the principle I contend for denies to the promisor compensation for the services he has actually performed. For these he can, and should, receive a compensation measured by the value of the services. He should not receive the entire estate, regardless of the question of value.

The judgment should be reversed.