[No. 24661. Department One. December 7, 1933.]

*In the Matter of the Estate of* ROSA AURITT, *Deceased.*[1]

*Hamblen, Gilbert & Brooke,* for appellant.
*Tustin & Chandler,* for respondents.

[1] Reported in 27 P. (2d) 713.

STEINERT, J.—This is a proceeding to establish and admit to probate a lost will, executed by Rosa Auritt, now deceased. The petitioners in the proceedings below were Gertrude Sillman Wolfe and William Sillman, Jr., niece and nephew, respectively, of the deceased. Resistance to the will was offered by George Sillman, brother of the deceased. Issues having been joined, a hearing was had, following which the court entered an order establishing the will and admitting it to probate. From that order, George Sillman has appealed. The petitioners above named are the respondents herein.

For several years prior to her death, Rosa Auritt, a widow, had made her home in Spokane with her brother, William Sillman, Sr., the father of respondents herein. It appears that Mrs. Auritt and her brother William owned, or were interested in, a farm near Prosser, and a day or two prior to May 23, 1932, had driven from Spokane to Prosser on some business connected with the farm. In their automobile, they carried a quantity of dynamite, presumably to be used in clearing operations upon the land. While they were driving upon the highway near the farm at about nine o'clock in the forenoon of May 23rd, the dynamite exploded, demolishing the car and instantly killing both of its occupants.

From a subsequent inquiry and investigation, it was learned that, on January 27, 1931, William Sillman, Sr., had executed a will in which the respondents were made the sole devisees; by a codicil dated February 4, 1931, the sum of three thousand dollars was bequeathed to Rosa Auritt, payable in annual installments of one thousand dollars, the legacy to lapse, however, in the event of Mrs. Auritt's death prior to completion of the payments. With this will, we are not immediately concerned in this action; we men-

tion it only because it indicates the affection that existed between Mr. Sillman and his sister.

Through the same investigation and inquiry, it was also learned that Rosa Auritt had, on February 4, 1931, executed a will in which all of her property was bequeathed and devised to her brother, William Sillman, Sr., "to have and to hold the same to himself and heirs, absolutely and forever." It is this will that has given rise to this litigation. Neither of these wills has ever been found. In the proceeding below, a carbon copy of Rosa Auritt's will was identified and, over appellant's objection, was admitted in evidence.

Owing to the limited questions before us on this appeal, it is unnecessary to cover in detail the evidence supplied by a rather voluminous record. We will confine ourselves to a statement of such further facts as are necessary to an understanding of the issues involved.

 Under his first assignment of error, appellant contends that the court erred in concluding, holding and deciding that the contents of Rosa Auritt's last will and testament had been established as required by law. The contention rests upon the provisions of Rem. Rev. Stat., § 1390, which, so far as it is applicable in this connection, reads as follows:

"No will shall be allowed to be proved as a lost or destroyed will . . . unless its provisions shall be clearly and distinctly proved by at least two witnesses, . . ."

There were three witnesses to the will: Glenn Cunningham, the attorney who drew the will, Ava Williams, a stenographer in Mr. Cunningham's office, who wrote the will from shorthand notes taken at Mr. Cunningham's dictation, and Lloyd Gandy, also an attorney. Mr. Cunningham testified that, just prior to the

execution of the will by Mrs. Auritt, he read it to her "verbatim," carefully explaining its contents to her before she signed it; that the carbon copy of the will offered and admitted as evidence in the case was an *exact* carbon copy of the will executed by Mrs. Auritt in his office on February 4, 1931; and that he delivered the original instrument to Mrs. Auritt after its execution, and retained the carbon copy in his possession at all times until its introduction in evidence. Miss Williams testified that she recalled the provisions of the will, and that its contents were the same as those set forth in the carbon copy. Mr. Gandy merely testified as a subscribing witness to the will.

It is appellant's contention that Mr. Cunningham's testimony amounted to nothing more than a mere identification of the carbon copy of the will, and that the proof, therefore, did not meet the requirement of the statute which demands that the *provisions* of the will be clearly and distinctly proved by at least two witnesses. Mr. Cunningham was not only a subscribing witness, but was the very attorney that drew the will and painstakingly discussed its contents with his client. If, while on the witness stand, Mr. Cunningham had read the carbon copy aloud, line by line, or word by word, and had then stated of his own knowledge that the contents of the original were exactly the same, line for line and word for word, there could have been no doubt that, by his testimony, he had related and identified the contents of the will. His testimony, as he gave it, while more condensed, was none the less direct and effectual. It was positive proof of the exact contents of the will, and it seems to us that, in the absence of the original will itself, no better proof could have been supplied. A carbon copy of a will, together with oral testimony that it is an exact copy of the original, is competent and ad-

missible, as secondary evidence, to establish the making and the contents of a will that has been lost or destroyed. *Brown v. Jones,* 150 Wash. 449, 273 Pac. 194. In *Swingley v. Daniels,* 123 Wash. 409, 212 Pac. 729, it was held that a carbon copy of a will is properly admitted in evidence where the proof shows that it is an exact copy of an original that has been properly executed.

Appellant bases his contention upon three cases from this jurisdiction: *In re Harris' Estate,* 10 Wash. 555, 39 Pac. 148; *In re Needham's Estate,* 70 Wash. 229, 126 Pac. 429; and *In re Borrow,* 123 Wash. 128, 212 Pac. 149. None of those cases meets the situation here. In the *Harris* case, the witness who attempted to identify a carbon copy of an alleged will testified that he had no knowledge of the contents of the will which he had subscribed as a witness; hence, there was no proof that the copy was a correct one. In the *Needham* case, the witness knew nothing of the execution or of the contents of the will except what he had been told by the testator. In the *Borrow* case, the evidence is not set forth in the opinion, the court contenting itself with simply saying that, after a consideration of all the evidence, including the surrounding circumstances, it felt convinced that it had not been established that any will had ever been made by the decedent.

Here, the evidence was much stronger, in fact almost conclusive, and we are satisfied that the trial court correctly found and held that the contents of the last will of Rosa Auritt had been established as required by law.

Under two other assignments of error, jointly argued, appellant contends that the court erred in concluding, holding and deciding that the last will and testament of Rosa Auritt was in existence at the time

of her death, and that she had not revoked it in her lifetime. Again Rem. Rev. Stat., § 1390, is relied on, the following portion thereof being quoted in the brief:

"No will shall be allowed to be proved as a lost or destroyed will unless the same shall be proved to have been in existence at the time of the death of the testator."

It is undoubtedly true that, where a will which has been proven to have once been in existence can not be found after the death of the testator, the law presumes that it was destroyed by the testator *animo revocandi*. *In re Harris' Estate,* 10 Wash. 555, 39 Pac. 148; *In re Robinson's Estate,* 149 Wash. 307, 270 Pac. 1020; 28 R. C. L., p. 384, § 388. However, it is equally true, as stated in the very authorities just cited, that the presumption is not a conclusive one, but may be rebutted. To rebut such presumption, evidence as to the testator's attitude of mind, as indicated by his declarations made between the time of executing the will and the time of his death, is admissible.

While there may be some conflict of judicial opinion on this point, the overwhelming weight of authority is in support of the rule as just stated. Schouler on Wills, 6th Ed., Vol. 2, p. 897; Thornton on Lost Wills, §§ 58, 59; 28 R. C. L., p. 383-4, § 387; *Ewing v. McIntyre,* 141 Mich. 506, 104 N. W. 787; *Wendt v. Ziegenhagen,* 148 Wis. 382, 134 N. W. 905; *Jackson v. Hewlett,* 114 Va. 573, 77 S. E. 518; *McMurtrey v. Kopke,* 250 S. W. (Mo.) 399; *In re Thompson's Estate,* 200 Cal. 410, 253 Pac. 697; *In re Creger's Estate,* 135 Okla. 77, 274 Pac. 30, 62 A. L. R. 690.

The evidence, to overcome the presumption, must be clear, satisfactory and convincing, and its weight will therefore depend upon the proximity in time of

the testator's declarations and the other circumstances under which they are made. Nevertheless, the objection to such evidence goes only to its weight, not to its competency.

In the case before us, the evidence is abundant and ample to the effect that Rosa Auritt bore a very strong affection for her brother William; that her attitude toward him never changed from the time that she made her will until the time of her death, and that she repeatedly affirmed, up to within a few days of the fatal tragedy, that she had made her will in her brother's favor. From a reading of the record, we can come to no other conclusion than that arrived at by the trial court, namely, that Rosa Auritt never revoked her will, but that it was in existence, somewhere, at the time of her death.

Appellant makes one other assignment of error, which we do not feel called upon to discuss, inasmuch as it does not present or suggest any exception to the rules hereinabove announced. The assignment relates to a question of fact, upon which the court expressed its view in its oral decision. Suffice it to say here that, after reading the record, we are of the opinion that the trial court was fully warranted in arriving at the conclusion that it did upon that issue of fact.

Finding no error in the record, we conclude that the judgment must be, and it is, affirmed.

BEALS, C. J., MILLARD, MAIN, and MITCHELL, JJ., concur.