WILLIAM C. DROHAN *vs.* AROGO DE JOSÉ F. AVELLAR & others.

MINOT H. BATES *vs.* MARY S. ROSE & another.

Plymouth.   April 10, 1931. — September 10, 1931.

Present: RUGG, C.J., CARROLL, WAIT, SANDERSON, & FIELD, JJ.

*Probate Court, Jurisdiction, Foreign will.*

⁀ne domiciled in a city in this Commonwealth, while temporarily abiding in one of the Azores Islands, a dependency of Portugal, executed his will according to the laws of that place. The will before execution was written by a notary in an official book of record of wills kept by the notary, who was the officer provided by the law there for that purpose. It was executed with all the formalities prescribed by the laws there. The original book in which the instrument was written was an official record and could not be transmitted to this Commonwealth but had to remain permanently in the jurisdiction of its original execution. The testator died in this Commonwealth, leaving next of kin here and elsewhere. A petition for proof of the will was presented, accompanied by a true and attested copy of the official record of the Portuguese notary, duly authenticated. *Held,* that
    (1) The Probate Court had original jurisdiction of the proof of the will of the decedent and of the settlement of his estate;
    (2) The instrument should be allowed as the will of the decedent.

PETITION, filed in the Probate Court for the county of Plymouth on November 13, 1928, for the appointment of an administrator of the estate of Manuel J. Avellar, late of Brockton, alleged to have died intestate. Also a

PETITION, filed in the same court on August 1, 1930, for proof of an alleged will of the same decedent.

The two petitions were heard together by *L. E. Chamberlain,* J. Material facts found by him are stated in the opinion. He reported and reserved the petitions for determination by this court.

*E. H. Fletcher, (H. K. Stone* with him,) for Minot H. Bates.

*O. V. Fortier, (W. C. Drohan* with him,) for William C. Drohan.

Rugg, C.J.    Manuel José d'Avelar, alias Manuel J. Avellar, died in Brockton in our county of Plymouth in May, 1928.   He was for many years prior to the events to be narrated and continuously until his death domiciled in Brockton and a citizen of this Commonwealth.   He left as his only heirs at law and next of kin a sister and brother living in Oakland, California, and a sister and two brothers living in Corvo, Azores Islands.   His entire estate is personal property in Brockton.   While sojourning temporarily on the Island of Flores in the Azores Islands, a dependency of the sovereign State of Portugal, and there visiting relatives, he executed on August 30, 1921, in accordance with the laws of that place an instrument purporting to be his last will.   The instrument was written by a notary in an official book of record of wills kept for that purpose by a notary, the officer provided by the law for that purpose, and was signed by the decedent in the presence of three subscribing witnesses known to the notary who identified to him the decedent and also verified the perfect sanity of the decedent and his freedom from all duress and coercion.   The notary under the Portuguese law is a public officer named for life by the government whose functions, among others, are "to make authentic testaments and to draw up the act of approbation of private wills."   The instrument was executed with all the formalities prescribed by the laws of Portugal, including a declaration by the decedent that it was his last will.   After the will was written in this official record it was read aloud in the presence of the witnesses to the decedent.   The instrument under the laws of Portugal would need no further action in that State to make it an effectual disposition of so much of the estate of the decedent as was subject to disposition by him.   The original book in which the instrument was written was an official record and cannot be transmitted to this Commonwealth but must remain permanently in the jurisdiction of its original execution.   A true and attested copy of that official record made in the Portuguese language, duly authenticated by the officer having custody of it, and a true and correct translation into English from the Portuguese language are presented with the petition

asking for its allowance as the last will of the decedent. The question is whether this petition can lawfully be granted.

The Probate Court of Plymouth County had original jurisdiction of the proof of the will of the decedent and of the settlement of his estate because he was domiciled in that county at the time of his death. G. L. c. 215, § 3. *Rackemann* v. *Taylor*, 204 Mass. 394, 397–398. It is provided by G. L. c. 191, § 5, that "A last will and testament executed in the mode prescribed by the law, either of the place where the will is executed or of the testator's domicile, shall be deemed to be legally executed, and shall be of the same force and effect as if executed in the mode prescribed by the laws of this commonwealth; provided, that such last will and testament is in writing and subscribed by the testator." This statutory provision plainly would authorize and require the allowance of the original of the instrument here offered for probate if produced and presented for the files of the appropriate probate court, notwithstanding the differences between the law prevailing in the place where it was executed and the law of this Commonwealth. *Bayley* v. *Bailey*, 5 Cush. 245. *Crippen* v. *Dexter*, 13 Gray, 330, 332.

The point of difficulty arises from the fact that the original instrument itself cannot be produced and placed on the records of the court, because under the law of the sovereign State where it was executed it became an official record there in the custody of a public officer provided by law for that purpose, must perpetually remain as a part of its public records and cannot be transmitted to this Commonwealth. That has been found by the trial judge to be the law of Portugal governing the Azores. The Portuguese Civil Code covering this point is set out in the record. The finding appears to be right and is accepted. The precise question is whether in these circumstances the contents of the will can be proved by a duly authenticated copy.

The contents of a will which has been lost or destroyed may be proved by secondary evidence and if satisfactorily established may be admitted to probate. *Davis* v. *Sigourney*, 8 Met. 487. *Newell* v. *Homer*, 120 Mass. 277. *Tarbell* v. *Forbes*, 177 Mass. 238. *Coghlin* v. *White*, 273 Mass. 53.

That is not because of any statutory provision but because
of the inherent function of the court to do justice in con-
formity to law.   In *Slocomb* v. *Slocomb*, 13 Allen, 38, it is
stated that a nuncupative will executed in the State of
Mississippi according to its law was offered for probate.
It was held that such a will might be proved and allowed.
The form in which the will was offered does not clearly
appear in the report of that decision.   An examination of
the original files shows that an instrument purporting to be
the oral testamentary declaration of the decedent, not signed
by him but written at his request and signed by the per-
son transcribing it, and attested as a correct transcript by
another in whose presence it was made, and signed by still
another person, accompanied the petition for proof of the
will.   In *Loring* v. *Oakey*, 98 Mass. 267, 269–270, the court,
in speaking of a will, the original of which was in the files
of the court having jurisdiction of the subject in New York,
said: ". . . we have no doubt that the inability to produce
the original, caused by its detention in a foreign court, would
make secondary evidence of its contents admissible, as much
as if the paper were lost."   This statement although perhaps
not essential to that decision was uttered by a court com-
posed of justices eminent for ability and learning.   It is
based upon sound reason.   It is supported by the analogy
of proof of wills lost or destroyed.   An instrument in the
official custody of a civilized foreign nation is quite as sus-
ceptible of accurate proof as to its due execution, its contents,
its authenticity as is an instrument lost or destroyed.   To
permit the allowance by official copy of such an instrument
as a final testamentary disposition protects the wishes of the
decedent expressed in conformity to the law of the place
where he was at the time of its execution.   To allow such
proof tends to the promotion of international comity.   It
is within the spirit as well as the letter of the statutory
provision in G. L. c. 191, § 5 already quoted.   As was said
in *Slocomb* v. *Slocomb*, 13 Allen, 38, at page 41, "A person
in another state or country might not be acquainted with
the formalities established for the making of wills under our
laws;  and, when desirous of making a will, might have no

means of gaining the necessary information.  But he might well be supposed to have it in his power to ascertain the formalities required in the country in which he was.  If the laws of that country allowed a will made before a notary, and reduced to writing and certified by him, without the testator's signature;  or if they dispensed with any or all of the witnesses which our laws require;  a will made accordingly would conform to all the requirements of the 8th section [now G. L. c. 191, § 5] . . . and the statute was designed to protect him in resorting to the mode of bequest which he might there be advised was legal."  That the decedent made no change in the expression of his testamentary design after returning to the country of his domicil and living here a number of years is some confirmation, if any were needed, that he was satisfied with the terms of the Portuguese instrument.

We are therefore of opinion that the instrument ought to be allowed as the will of the decedent.  In accordance with the terms of the report, decree to that effect is to be entered upon the petition for administration with the will annexed and letters of administration with the will annexed are to be issued to Minot H. Bates and William C. Drohan, they first giving bond with sufficient sureties in a sum to be fixed by the Probate Court.

*Ordered accordingly.*