In the Matter of the Estate of JULIE LUBY, Deceased.

Surrogate's Court, Rensselaer County, October 13, 1932.

*Earle J. Wiley*, for the proponent.

*John J. Cain* [*Michael J. Deignan* of counsel], for Matthew Luby, executor named in prior will.

*John T. Norton*, special guardian for infants.

WAGER, S. This is a proceeding for the probate of a will alleged to have been inadvertently destroyed by the petitioner subsequent to the decedent's death. It appears from the testimony adduced on the trial and the papers filed in this matter and in proceedings for probate of prior will that the decedent died at the city of Troy, N. Y., on Monday, April 11, 1932; that she was buried Thursday, April fourteenth; that on Friday, April fifteenth, the petitioner William J. Luby, who is the only child and would be the only distributee in case of intestacy of the deceased, visited the law office of John J. Cain to ascertain if his mother had left a will. He was informed that Mr. Cain was out of town but would return the first of the coming week; that on the afternoon or evening of the same day, April fifteenth, the petitioner went to his mother's apartment and found the alleged will which he seeks to probate, with certain old receipted bills, on the floor of a closet off of one of the bedrooms; that he took the old bills and the will and burned them in the furnace. He testified that he saw a statement on the first page about the payment of all just debts and funeral expenses and noticed his mother's signature at the bottom of the page. He also noticed the signature of the two subscribing witnesses, Mr. Nash and Mr. Scully, and the date of the instrument. On the next morning, April sixteenth, he called upon Mr. Wiley, an attorney, and a petition and papers for the granting of letters of administration were prepared, and the petitioner together with Mr. Wiley appeared that same morning before the surrogate and obtained letters of administration. The petition for letters of administration contained a clause that he had searched for a will and found none, and he also testified that he heard the surrogate ask Mr. Wiley concerning a will, and that Mr. Wiley told the surrogate that the petitioner had looked for a will but had found none. Letters of administration were granted to the son, and on April nineteenth Mr. John J. Cain, the attorney representing Matthew Luby, executor mentioned in the will dated June 28, 1924, filed a petition for the probate of this last-mentioned will and obtained a citation. Citation was issued to the son, William J. Luby, and was made returnable April twenty-ninth. On April twenty-ninth the son appeared with his attorney, Earle J. Wiley, in proceedings for the probate of the will dated June 28, 1924,

and Mr. Cain, the surviving subscribing witness to said will, was examined and cross-examined concerning the execution of the 1924 will. An adjournment was had from April twenty-ninth to May ninth. On the last-mentioned date verified objections to the probate of the 1924 will were filed by Mr. Wiley, as attorney for the son. On May twenty-fourth the son executed the petition for the probate of the alleged will which he claimed he inadvertently destroyed after his mother's death, and which it is claimed was dated August 26, 1929, and was executed before Dennis P. Nash and James E. Scully as subscribing witnesses. Objections to the probate of this alleged destroyed will were filed on behalf of the executor of the 1924 will and by the special guardian of the three minor legatees (grandchildren) named in the 1924 will.

Two issues are raised and have been vigorously contested in this matter. The first, was the alleged will of August 26, 1929, in existence at the time of decedent's death and was it destroyed as alleged by the petitioner, the son? The second issue is, was there ever a will executed by the decedent on August 26, 1929, as claimed by the petitioner?

The only evidence submitted as to the destruction of this will was that of the petitioner, the son, who testified to finding the document on the closet floor with other old papers and of only reading about the payment of debts and signatures and the date, and then taking it with the other old papers and burning it. The alleged copy of this will was produced by one of the witnesses, and if it is a copy it shows that the document gave to the petitioner, the son, substantially the entire estate of the decedent.

The burden of proof is on the proponent to establish all the material facts, that is, the existence of a will, its destruction, and the fact that a will was actually made at the time stated. (See *Matter of Kennedy*, 167 N. Y. 163.)

It seems unbelievable that a person looking for a will, going to the attorney's office and inquiring if his mother left a will, going home and finding a document typewritten which had printed near the beginning " Last Will and Testament," signed by his mother and by two witnesses, would deliberately take and destroy such document, and within twenty-four hours inform his attorney that there was no will, sign and verify a petition that he had searched for a will and found none, and wait one month before taking any steps or bringing any proceedings to have the paper so destroyed proven and established. The will of 1924 made no provision for the son and the petitioner in this particular proceeding.

After considering all of the testimony and observing the witnesses on the stand, the surrogate is satisfied that the petitioner has

failed to establish the first requisite fact, that the will was in existence at the time of the decedent's death and was destroyed as alleged.

As to the question whether or not there was a will executed by the decedent on August 26, 1929, there was produced an alleged typewritten copy of said document and the two witnesses thereto, both being attorneys, were called. In this document the decedent's name was spelled " Julie " Luby. In the prior will and on her bank books and accounts her name was given as " Julia." The witness Nash, who prepared the will, resides and is a practicing attorney in Syracuse, N. Y. He lived in Troy as a boy and knew the Luby family. He represented the petitioner in this proceeding, the son, before the United States court when the son was charged with a violation of the Volstead Act. He claims and testifies that in June, 1929, he was informed that the decedent desired to make a will. The day before August twenty-sixth he was in town and she gave him the data from which the will was drawn; that he dictated the will to the stenographer in Mr. James E. Scully's law office in Albany, and it was taken directly on the typewriter and not in shorthand; that an original and two carbon copies were made; that after the will was drawn he went with Mr. Scully to the residence of the decedent in Troy and the paper was then executed. He took the original back to Mr. Scully's office, decedent's name and the witnesses' names were inserted in the carbon copies in typewriting; the original was then mailed to the decedent, one copy was kept by Mr. Nash and the other given to Mr. Scully. Mr. Scully gave very little testimony of any importance, as he stated he could not remember, only going to the city of Troy and witnessing a will with Mr. Nash; that he did not know the party; did not know the contents of the will; did not keep or could not find any copy that was claimed to have been left with him; and as testified to by him he was very hazy about the whole matter.

Mr. John J. Cain, an attorney of Troy, who prepared the will of 1924, had been the attorney for the decedent in many matters. He lived in her immediate neighborhood and was available on short notice if he was required at any time by the decedent.

Section 143 of the Surrogate's Court Act provides that " a lost or destroyed will can be admitted to probate in a Surrogate's Court, but only in case the will was in existence at the time of the testator's death, * * * and its provisions are clearly and distinctly proved by at least two credible witnesses, a correct copy or draft being equivalent to one witness."

The only witness produced that had any knowledge of this particular paper was the attorney Nash, and the typewritten copy

claimed to have been kept by Nash from the time of the execution of the paper and to have been made by Mr. Scully's stenographer was produced to satisfy the provision of the statute and to take the place of one witness. The stenographer who was in the employ of Mr. Scully at the time of the drafting of this paper was produced as a witness. She testified positively that the typewritten paper purporting to be a correct copy of the will was not made by her, and pointed out certain positive reasons to support her testimony.

The decedent had been for several years very much dissatisfied with the conduct of her son, in that he had left his wife and three children and was living in open adultery with another woman and had a child by this woman, and expressed herself forcibly to her attorney, Mr. Cain, and to many neighbors that she would not permit such a dissolute woman to share in any of her property. The will that is sought to be established here is contrary to such express determination of the decedent, and the requirement of section 144 of the Surrogate's Court Act is that "before admitting a will to probate, the surrogate must inquire particularly into all the facts and circumstances, and must be satisfied with the genuineness of the will, and the validity of its execution." The rigid requirements of the law relating to the probate of alleged lost or destroyed wills are necessary for the purpose of preventing fraudulent and fictitious attacks upon the estates of the dead. Courts must examine the evidence offered, carefully and thoroughly.

Weighing the evidence in this proceeding from all angles, the surrogate is satisfied that the petitioner has failed to establish by the burden of proof that a will on August 26, 1929, was executed by the decedent, and that the paper offered as a copy of said will is a correct copy. On the whole testimony the surrogate decides: *First,* that no paper alleged to be a will of the decedent bearing date August 26, 1919, was destroyed by the petitioner, as alleged in this proceeding. *Second,* the surrogate also decides that the petitioner has failed to prove that there was in fact a last will and testament executed by the decedent on August 26, 1929, in words and substance of the offered typewritten copy.

Appropriate findings denying probate of this alleged destroyed will may be prepared in accordance with this opinion, and a decree entered thereon.