(No. 6706. July 27, 1940.)

H. J. HULL, LAWRENCE E. WORSTELL and GEORGE A. MORTIMER, Respondents, v. DANIEL CARTIN, THERESIA GEARON, AGNÊS ROHWEDER and ALICE COCHLIN, Appellants.

[105 Pac. (2d) 196.]

Walter H. Hanson and Claude D. Randall, for Appellants.

James A. Wayne and F. C. Keane, for Respondents.

AILSHIE, C. J. (After Making the Statement).—The proponents proceeded in accordance with the practice suggested by this court in *Head* v. *Nixon,* 22 Ida. 765, 128 Pac. 557, wherein it was said:

"Where a petition for probation of a will and a contest are tried at the same time, the proponent should first present his preliminary proof in support of his petition, on which he has

the burden of proof; and when other evidence is also introduced in favor of the contestant, the burden of proof then shifts to the contestant."

They submitted the proof which they conceived sufficient to make a *prima facie* case, to establish the due execution, contents and loss or fraudulent destruction of a written and witnessed will. The contestants who, under the statute (sec. 15–213, I. C. A.) became plaintiffs on the trial, moved the court to dismiss the petition of the proponents, on the grounds that, first, "it has not been proved here that the will was in existence at the time of the death of the testator; in the second place, it has not been shown that it was fraudulently destroyed in the lifetime of the testator; and in the third place, it has not been shown that the provisions have been clearly and distinctly proved by at least two credible witnesses."

The motion was granted and the proponents' petition was dismissed. Our section 15–213, I. C. A., was evidently copied from California and corresponds with section 1312, Kerr's Code of Civil Procedure. The California statute came under consideration of the Supreme Court in *In re Latour's Estate,* 140 Cal. 414, 73 Pac. 1070, 74 Pac. 441, and Justice Shaw, speaking for the court, said:

"The so-called 'written grounds of opposition' provided for in section 1312 is not a response to the petition, controverting or avoiding its allegations. It is a pleading collateral to the petition, and related to it only to the extent that it cannot be filed until there is a petition filed, and that it is in some sense subordinate to it, so that if the petition is dismissed, or if it is denied after the hearing of the formal preliminary proof, the contest falls with it. This preliminary proof is addressed to the court alone. If a jury has been called to try the issues arising upon the contest, the preliminary proof is for the court, and not for the jury, unless the court directs the contrary, or the parties treat it as part of the case for the jury. If, after hearing this proof, the court is of the opinion that a *prima facie* case is made in support of the will, it should reserve its decision upon the petition, and direct the trial to proceed upon the contest in the manner specified in section 607; the contestant, as plaintiff, first introducing his evidence

in support of his written grounds of opposition, and the proponent, as defendant, then producing his evidence in support of his answer thereto, and in rebuttal of the evidence on behalf of the contestant. If the preliminary proof does not satisfy the court, it should thereupon refuse probate and end the proceeding without further ceremony.''

The latter holding is in harmony with the views expressed by Chief Justice Beatty in his dissenting opinion (concurred in by Justices Henshaw and Lorigan) in *In re Latour's Estate,* 140 Cal. 414, 73 Pac. 1070, at 1076 and 1077, 74 Pac. 441.

In the case at bar, after the motion had been sustained and the proponents' petition had been dismissed, the proponents appealed to the District Court on *questions of law alone,* so there was not, and could not be, any trial in the District Court on questions of fact. All that court could do was to examine the record and determine whether, as a legal conclusion to be drawn from the proofs submitted in the probate court, the proponents had submitted sufficient evidence which, in the absence of any other or contrary evidence, was sufficient to made a *prima facie* showing for an order admitting the alleged will to probate. In order to make a *prima facie* case, it was necessary, under section 15–213, for proponents to prove (*inter alia*) the *contents* of the alleged lost will. The evidence introduced by proponents of the will to establish its execution, contents, and loss, comprise a large volume, and it would be impossible, as well as useless, for us to even digest it in this opinion. We, therefore, in addition to the general preliminary statement herein, content ourselves by quoting from respondents' brief their statement with reference to the nature and sufficiency of the proof of *contents of the will* in this respect:

''The contents of a lost will is the only fact required by the Idaho statute to be proven by any higher or greater degree of proof than any other fact. Section 15–231 does require that the provisions of a lost will must be clearly and distinctly proved by at least two credible witnesses.

''In the present case the respondents proved the execution of the will by one subscribing witness, Elsie Ryan, and accounted for the absence of the other witness. Miss Ryan did not read the will nor testify to its contents, except as her evi-

dence is aided by that of the other witness present at the signing of the will, H. J. Hull, who identified Exhibit No. 2 as an exact copy of the will just as the same was signed by Mrs. Gearon and attested by the subscribing witness. Mr. Hull testified that there were no alterations, changes or interlineations made in the will as signed.

"The respondents further offered the testimony of George A. Mortimer, with whom Mrs. Gearon had discussed the will after it was made, and as late as December, 1936, some three months before her death, and to whom she told the contents of the will in detail (808; 813 et seq.). In this conversation with Mr. Mortimer, Mrs. Gearon told him the entire contents of the will, except the few small bequeaths of jewelry, Oriental rugs, and small items of personal property which she had left to friends.

"So in the present case the contents of this will were proved by three witnesses, Elsie Ryan, H. J. Hull and George A. Mortimer."

We deem it proper here to observe that it is doubtful whether a contestant has the right to cross-examine a proponent's witness, on his making *prima facie* proofs preliminary to a contest wherein the statute declares the contestant shall proceed as *plaintiff*. Our statute, section 15–231, I. C. A., provides:

"No will shall be proved as a lost or destroyed will unless the same is proved to have been in existence at the time of the death of the testator, or is shown to have been fraudulently destroyed in the lifetime of the testator, nor unless its provisions are clearly and distinctly proved by at least two credible witnesses."

According to the statute, there is one fact that must be "clearly and distinctly proved by at least *two* credible *witnesses*" and that fact is the *"provisions"* of the will. Here we have the provisions of the will (a *verbatim* copy) proven "clearly and distinctly" by one credible witness, Mr. Hull. At this point we are halted in our quest for proof. No other *witness* knows or is able to testify that the executed will actually contained the matters and things contained in the copy identified and proven by Mr. Hull. We may personally feel perfectly satisfied that the copy produced is an exact

literal copy of the will that was executed by the testatrix; but even though we be so satisfied, what are we to say judicially in face of this requirement of the statute, that "its provisions" must be *"clearly and distinctly proved by at least two credible witnesses?"* One is lacking; shall or can we construe some substitute by way of circumstantial evidence and legal presumptions to take the place of *one* credible witness? Suppose the one witness proponents have produced were not of the high standing and repute of the one who has testified; what should we then do? Was not there a deliberate purpose in the minds of the lawmakers, in adopting this statute, to make as certain and sure of the contents of the lost will as it was to make sure of the due execution of the original by requiring that it be witnessed by the genuine signatures of two subscribing witnesses, no matter how credible each might be?

This statute authorizing the proof of the contents of a lost will is intentionally strict and prescribes definite and certain proof that *must* be produced; the statute is clear, plain, unambiguous, and mandatory. The moment, however, that the court departs from the plain rule of the statute and undertakes to accept hearsay and circumstantial evidence, to take the place of one witness, it will only be one further step to the acceptance of such proofs to take the place of *the other witness*. Furthermore, the moment the court opens the door to circumstantial and hearsay evidence and oral statements, to supply the absence of one witness to the *provisions* of the will (a document required to be in writing), it will find itself wandering in a morass of doubts and uncertainties which it was the evident purpose of the lawmakers to obviate. In the instant case it is admitted that *at the time of the execution* by Mrs. Gearon of her will, Mr. Hull was the only person except herself that knew the contents of the will. She had even forbade the dictation of her will to a stenographer and required Mr. Hull to type the will himself. This expressed and manifest secrecy on the part of the testatrix, as to the contents of her will and objects of her bounty, renders it improbable that she would be very frank or communicative about divulging the *real provisions* of her will to anyone but Mr. Hull who already knew them.

We are unable to hold that any substitution of circumstantial evidence, hearsay, or statements of the testatrix in parol can be accepted in lieu of one of the required "two credible witnesses" in proof of the provisions of a lost will. It is otherwise where the statute so provides. (*In re Wear's Will*, 131 App. Div. 875, 116 N. Y. Supp. 304.) The difficulty of making the proofs required by the statute cannot obviate the necessity of doing so.

Cases are cited from several states, to the effect that secondary evidence as to the contents of a lost will is sufficient; and also, where one witness has produced a copy, and corroborative statements are shown as having been made by the testator, the will may be probated. In those states, however, there does not appear to be any statute cited or relied upon prescribing the *quantum* of proof or number of witnesses necessary to establish the contents of a lost will. (*In re Miller's Will*, 49 Or. 452, 90 Pac. 1002, 124 Am. St. 1051, 14 Ann. Cas. 277; *Buchanan v. Rollings*, (Tex. Civ. App.) 112 S. W. 785; *Neal v. Caldwell*, 326 Mo. 1146, 34 S. W. (2d) 104; *Hanna v. Magee*, 189 Ark. 330, 72 S. W. (2d) 237; *Drohan v. Avellar*, 276 Mass. 441, 177 N. E. 583; *Arnold v. Windley*, 177 N. C. 156, 98 S. E. 378.)

It is no doubt also true that the declarations of a testator may be admitted to overcome or rebut the legal presumption that a will has been destroyed *animo revocandi*, but that is quite a different thing from offering declarations as to the contents of a written will executed under the formalities prescribed by the statute.

California has a statute (sec. 1339, Code Civ. Proc.) which reads the same as ours in reference to the requirement of *two witnesses;* and in *In re Thompson's Estate*, 185 Cal. 763, 198 Pac. 795, 796, Justice Wilbur, who wrote the majority opinion, said:

"This witness testified to the contents and the due execution of the will of 1916. The only other witness testifying to the contents of the will of 1916 was the respondent, who was examined on that subject by the court. To this testimony respondent's attorney objected as follows:

" 'I would like to object to her positive testimony that she received a copy on the ground that it is hearsay and not the best evidence.'

"The objection being overruled, the court elicited the testimony of the witness to the effect that respondent had received a letter at Portland, Or., in 1916, from the testatrix inclosing a copy of the will of 1916, and stating that it was her last will. The letter itself had been destroyed. The statement that the inclosed copy of a will was her last will was merely a declaration of the testatrix so that the question presented here resolves itself into this: Can a lost or destroyed will be proved by the testimony of one witness who saw the original will and by evidence of the declarations of the deceased as to its contents? The fact that the decedent accompanied her declaration by a carbon copy of the will did not place the recipient thereof in a position to testify of her own knowledge as to the contents of the lost or destroyed will, which she had never seen. Her testimony would merely establish the hearsay declaration of the deceased. In this state the statute (section 1339, Code Civ. Proc.) requires two credible witnesses, and the testimony of the declarations of the decedent cannot supply the place of one of these witnesses. This was held by the Supreme Court of the state of Washington, under a similar statute, in *Estate of Needham,* 70 Wash. 229, 126 Pac. 429, and, as we agree with that decision the order admitting the will of 1916 to probate must be reversed."

There appears to have been doubt subsequently expressed by the court, as to whether or not the foregoing quotation expressed the opinion of the majority of the court or merely the minority. (See *In re Johnson's Estate,* 188 Cal. 336, 206 Pac. 628.) However, the reasoning of the opinion seems sound.

The state of Washington had a statute (sec. 1314, Rem. and Bal. Code) almost identical with sec. 15-231, I. C. A., requiring the provisions of the will to be "clearly and distinctly proved by at least two credible witnesses." The sufficiency of proofs under this statute was raised in the Needham case (mentioned and cited in the Thompson case, above quoted); and Mr. Justice Parker, in speaking for the court, said (p. 430):

"Assuming, for argument's sake, that the offered evidence had all been received by the court and that it was all true, would it have been a proving of the provisions of the will by 'at least two credible witnesses,' as provided by section 1314, above quoted? We think not. The only witness produced who could have possibly testified to the provisions of the will from his own knowledge was the witness Skinner. He did state that he understood that the paper witnessed by him was a will; and it is not impossible, had he been permitted to testify further, he would have been able to state its provisions. But assuming that he would have so testified, that would have been only one witness to its provisions, and would not have satisfied the statute. The offered testimony of the witness Adams would not have amounted to the testimony of one witness such as the statute contemplates; for it was based entirely upon what he was told by the deceased. He knew nothing, either of the execution or contents of the will, save as told to him by the deceased. While, in the absence of a statute prescribing the manner of proof and number of witnesses necessary to establish a last will, it has been held that the declaration of the testator may be testified to by a witness who has heard such declaration as evidence tending to prove the provisions of a last will, it seems plain to us that the testimony of a witness to such a fact is not proving the provisions of the will by such a witness, as is required by this statute. A witness who testifies only to what he learns from statements made by the testator is really giving only hearsay testimony. He could not be said to be testifying to the provisions of the will, but only to what another had stated its provisions to be. We think the two witnesses required by the statute must each be able to testify to the provisions of the will from his own knowledge of its contents. Otherwise its provisions would not be proven by two credible witnesses."

The holding in the Needham case was subsequently followed in *In re Borrow's Will*, 123 Wash. 128, 212 Pac. 149. The issue was again urged before the same court in *In re Auritt's Estate*, 175 Wash. 303, 27 Pac. (2d) 713. The court in the latter case referred to and recognized the rule announced in the previous cases but, without stating any reason, said:

"Here, the evidence was much stronger, in fact almost conclusive, and we are satisfied that the trial court correctly found and held that the contents of the last will of Rosa Auritt had been established as required by law."

The question was squarely raised again in *In re Calvin's Estate*, 188 Wash. 283, 62 Pac. (2d) 461, and the opinion was written by the same Justice who wrote the Auritt case, and he then reaffirmed the previous cases as follows:

"The language of Rem. Rev. Stat., sec. 1390 is *mandatory* and may not be disregarded. *In re Harris' Estate*, 10 Wash. 555, 39 Pac. 148. The *two witnesses required by the statute must each be able to testify to the provisions of the will from his or her own knowledge, and not from the declarations of another, even of the testator himself.* *In re Needham's Estate*, 70 Wash. 229, 126 Pac. 429. This rule has been upheld in the comparatively recent case of *In re Auritt's Estate*, 175 Wash. 303, 27 Pac. (2d) 713, although in that case it was further held that, under the evidence, the contents of the will had been established as required by law." (Italics ours.)

Oklahoma has a statute similar to ours requiring two witnesses to prove the contents of a lost will, and the Supreme Court of that state in the case of *Day v. Williams*, 184 Okl. 117, 85 Pac. (2d) 306, called attention to the fact that California, Washington, Colorado, and Nevada each had a statute similar to the Oklahoma statute, and cited with approval the Washington cases above cited and said:

"There is no provision in section 1118, O. S. 1931, 58 Okl. St. Ann. sec. 82, *supra*, that requires proof by two witnesses of the execution of a lost will or of its existence at the time of the death of testator. Sufficient testimony to convince the court of the fact is all that is required, and the court is in no way bound to accept uncontradicted testimony. The requirement of the *proof of at least two credible witnesses applies only to the provisions of the lost will which must be clearly and distinctly proven.*" (Italics ours.)

*In re Harrison's Estate*, 316 Pa. 15, 173 Atl. 407, 94 A. L. R. 1019, the Supreme Court of Pennsylvania, in discussing the sufficiency of the proof of a lost will, said:

"The proofs required to establish a lost will have always been required to be strict and complete, as they should be.

All our cases show this. Where a lost will is sought to be established, there must be produced, not only two competent witnesses of its execution, but also two witnesses to show its contents. Not otherwise can it be known whether or not, upon a consideration of the entire document, its true construction is as appellant claims it is from the consideration of a single sentence which she alleges appeared in it. In *Hodgson's Estate*, 270 Pa. 210, 212, 112 Atl. 778, we said, speaking through Mr. Justice Kephart: 'Was there sufficient proof of the contents of the will, as executed before the two subscribing witnesses, to admit the copy thus identified to probate? . . . . The attesting witnesses knew nothing of the contents of the will, nor did they know, or could they know, without knowledge of the original, that the supposed reproduction, as offered for probate, was in substance a copy of the instrument they had witnessed. Their testimony was effective for but one purpose, and a very important purpose. It proved a will had been duly executed. There was no other evidence offered tending to establish the contents, nor was any memorandum produced for this purpose from any other person than the scrivener, and, assuming decedent identified the will by calling it the Riddle (that being the scrivener's name) will, still there is a fatal hiatus in the evidence which avoids bringing it within Wills Act . . . . requiring the contents of a lost will to be proved by the oath or affirmation of two or more competent witnesses; otherwise the will shall have no effect. Under the act, to establish a lost will, there must be proof by two witnesses, not only of due execution, but of the contents, substantially as set forth in the copy offered for probate.''

The foregoing excerpt from the Harrison Estate case had the approval of the full court and deserves special consideration on account of the clear and logical reasoning it presents in support of the statute and holding of the court, as well as for its clarity in pointing out the dangers into which a contrary rule inevitably leads.

Colorado has a statute similar to ours and in *In re Eder's Estate*, 94 Colo. 173, 29 Pac. (2d) 631, the court said:

''As has often been observed, to be put upon secondary evidence often results in difficulty or even lack of proof. We

are confronted by that situation in this record. To comply with the requirements of the statutes, it was *necessary for the proponents to make proof of the execution of the will* as in other cases, and to make proof of the *contents of the will by the testimony of two or more witnesses.* The defendants in error have failed in these important respects. To sustain the burden, the proponents offered the evidence of Kouns, Wallis, and Berry, the latter two the subscribing witnesses. Kouns' testimony was improperly admitted. That of Wallis was clear and convincing. He drew the will and produced a carbon copy, which the plaintiffs in error in their briefs conceded is a true copy of the original. He testified that all the formalities required by law were observed, and that Eder was of sound mind and memory when the will was executed. Berry's testimony, however, given in the form of a deposition, was insufficient, and those parts of it tending to sustain the execution of the will were stricken by the court. In substance, he testified that at the request and in the presence of Eder, and in the presence of Wallis, he had signed a paper which Eder described as his last will and testament, but his attempted identification, 'to the best of his knowledge and belief,' of a copy of the will, involved was stricken. Plainly Berry's deposition proved nothing whatever, and since without his testimony the statutory requirements were not satisfied, it was error to admit the will to probate.'' (Italics ours.)

A very scholarly discussion of the question now before us, both legal and historical, may be found in *Inlow v. Hughes,* 38 Ind. App. 375, 76 N. E. 763; see, also, *Madden v. Sevier,* 271 Ky. 688, 113 S. W. (2d) 41; note to *Clark v. Turner,* 38 L. R. A. 433, at 443 and 448; 68 C. J. 1034, par. 822.

The difficulty with which proponents of the will in this case were confronted is provided against by the statute of New York (sec. 143, Surrogate Court Act) and possibly the statutes of other states. It provides that

''A lost or destroyed will can be admitted to probate in a surrogate's court, but only in case the will was in existence at the time of the testator's death, . . . . and its provisions are clearly and distinctly proved by at least two credible witnesses, a correct copy of the draft being equivalent to one

witness." (*In re Luby's Estate,* 144 Misc. 900, 260 N. Y. Supp. 541; see also *Knapp v. Knapp,* 10 N. Y. 276.)

It is argued that "Respondents proved the provisions of the will by a carbon copy of the instrument, identical with the signed original, and this evidence was not secondary but was original evidence; the carbon copy was a duplicate original of the signed instrument, and admissible not as secondary evidence but as original evidence of its contents, when the execution of the other duplicate original had been proven."

This contention is faulty in that it overlooks the fact that the *copy* is proven by *only one witness* and that it falls short of being a "duplicate original" in the vital and essential particular that it (this so-called "duplicate original") was never executed *by being signed and witnessed.*

It has been held in New York, where the statute authorizes a *copy* to be accepted *in lieu of one witness* to the contents of the will, that the statute "cannot be satisfied by the testimony of one witness to the provisions of the will, and a copy or draft, proven to be correct by the *testimony of the same witness only.*" (*Collyer v. Collyer,* 17 Abbott's N. Cases, 328, 4 Dem. 53, 62.)

The rule of evidence applied by this court in *American Surety Co. v. Blake,* 54 Ida. 1, 27 Pac. (2d) 972, 91 A. L. R. 153, and by the federal court in *United States v. Manton,* 107 Fed. (2d) 834, 844, cited and relied by on respondents, is not applicable here because of the fact that we are, in this case, required to apply a rule prescribed by the statute which creates and confers the right to the benefit of which respondents are seeking to avail themselves.

The cases uniformly hold that statements and declarations of the testator made after the due execution of a will may be admitted to show that the will was lost or unavoidably destroyed or stolen against the wish and will of the testator during his lifetime. Such is direct and primary evidence tending to account for the failure of proponents to produce it in court for probate. But a very different issue arises and a different rule of evidence is involved, where it is essential to prove the *contents* of the lost will. It was a written document so required by law and its contents can only be truly and legally proven in one of two ways,—first, by a

proven copy, and second, by someone who has read or heard read the original, or what he himself knows to be a copy. It is neither a compliance with the statute nor the general rules of evidence for a subscribing witness to a will who never read or heard read the will, to read a *copy* identified by a *third party* who wrote it and then testify to the contents of such copy *as the contents of the will*. As proof, this skips the essential evidentiary fact to be established, viz.: The actual *contents* of the will subscribed. (*In re Guinasso's Estate*, 13 Cal. App. 518, 110 Pac. 335.)

It is true that if any witness can testify that a copy he produces is a *carbon or duplicate* copy of the lost will, that is the *best evidence of its contents*; but that does not make *such copy* the *best evidence* or even admissible on examination of *any other witness* as to the provisions of the will unless he personally knows it is a *carbon or duplicate* copy of the alleged lost will. So, it all comes back to the requirements of the statute that the "provisions" of the will (its contents) must be "clearly and distinctly proved by at least two credible witnesses,"—not *one witness and a carbon copy*.

This brings us to the inquiry that was propounded by the court to counsel prior to the last argument, viz.:

"Whether that provision" of the statute (sec. 15–231, I. C. A.) providing that "No will shall be proved as a lost or destroyed will . . . . unless its provisions are clearly and distinctly proved by at least two credible witnesses" is "in conflict with Art. 2 of the Idaho Constitution or with sec. 13 of Art. 5 thereof, wherein it is provided: 'The legislature shall have no power to deprive the judicial department of any power or jurisdiction which rightfully pertains to it as a coordinate department of the government; . . . . ' "

Since the question was not raised by either party to the litigation and no assignment of error has been specified thereon, it is the opinion of the writer that the question is not properly before us for decision. (*In re Brainard*, 55 Ida. 153, 157, 39 Pac. (2d) 769; *United Mercury Mines Co. v. Pfost*, 57 Ida. 293, 296, 65 Pac. (2d) 152.) However, in view of the fact that the court submitted the question to counsel and they have argued it here, we have concluded to consider

the question. The right to dispose of property by will is in "no sense a property right or a so-called natural right." (Page on Wills, 2d ed., p. 37, sec. 22; Bancroft's Probate Procedure, p. 58, sec. 31; *Re Davis' Estate,* 136 Cal. 590, 69 Pac. 412, 414; *In re Bump's Estate,* 152 Cal. 274, 92 Pac. 643, 644; *Dant's Executors v. Cooper,* 123 Ky. 359, 96 S. W. 454; *State ex rel. McClintock v. Guinotte,* 275 Mo. 298, 204 S. W. 806, 808.) The legislature, in conferring the authority to make a will and have it admitted to probate, and the testator's estate divested thereunder, may prescribe the procedure and condition under which it may be done.

Our answer to the question is in the negative. We fail to see wherein the statute conflicts with the Constitution.

The proponents failed to produce proofs of the contents of a lost will of the degree and by the number of witnesses required by our law, prescribing the measure and character of proof essential in such cases.

The judgment of the District Court will be reversed and the cause is remanded with directions to affirm the judgment of the probate court. No costs awarded.

Givens and Holden, JJ., concur.

BUDGE, J., Dissenting.—The majority opinion is founded upon the theory that the requirements of section 15–231, I. C. A., were not satisfied by competent proof. Section 15–231, *supra,* provides in part:

"No will shall be proved as a lost or destroyed will unless . . . . its provisions are clearly and distinctly proved by at least two credible witnesses."

To my mind the view taken by the majority of the court invokes technicalities that defeat justice and deprive the testatrix of the sacred right to dispose of her property according to her desire. The majority opinion holds in effect that the provisions of the lost or destroyed will were not clearly and distinctly proved by at least two credible witnesses. Mr. Hull, attorney for Mrs. Gearon, at her request and without the presence of any other person typed the will according to her instructions and directions. Mr. Hull typed the original and two duplicate originals, or triplicate originals. One of

these triplicate originals was signed by Mrs. Gearon and witnessed by two subscribing witnesses, Mr. Ramstedt and Miss Ryan, at the request of Mrs. Gearon who declared to them and to Mr. Hull that it was her last will and testament. It was established beyond controversy that the testatrix had the mental capacity to make a will and that she duly executed the lost will. Mr. Hull testified that he typed the will as above stated and that he knew the provisions thereof. While he did not sign the will as a subscribing witness he did witness the entire transaction and knew the contents of the will and it cannot, it seems to me, be logically contended that he was not a credible witness to the provisions of the will within the meaning of the statute. The triplicate original of the will in the possession of Mr. Hull, and there is no contention that it was not a triplicate original containing the identical provisions contained in the will signed by Mrs. Gearon and by the subscribing witnesses, would constitute a second credible witness within the meaning of the statute when not hypertechnically construed. However, in addition and to clearly and distinctly establish the provisions of the will there is the testimony of George A. Mortimer to whom in 1936 Mrs. Gearon disclosed in detail the contents and provisions of the will, excepting a few small bequests of personal property, and informed him that she had appointed him an executor and trustee and asked him if he would serve. Furthermore there is the testimony of Judge Worstell who was likewise informed by Mrs. Gearon approximately two and one half months before her death that she had appointed him one of her executors and trustees of the will and he testified to one provision of the will from memory from declarations she made to him of its contents. Likewise another witness, Mrs. Katherine Murphey to whom Mrs. Gearon had disclosed certain provisions of the will testified as to those provisions. The contents of the original will and all of its provisions were before the court in that triplicate original of the will in the possession of Mr. Hull, identical in every way with the signed original. This triplicate original will is not in truth a copy and is not secondary evidence but is a duplicate original of the signed instrument, and admissible not as secondary evidence but as original evidence of its contents, the execution of the

other duplicate original having been proven. (*American Surety Co. v. Blake,* 54 Ida. 1, 27 Pac. (2d) 972, 91 A. L. R. 153; *Common School Dist. v. Twin Falls Nat. Bank,* 50 Ida. 668, 299 Pac. 662; *Wright v. Chicago B. & Q. Ry. Co.,* 118 Mo. App. 392, 94 S. W. 555; *International Harvester Co. v. Elfstrom,* 101 Minn. 263, 112 N. W. 252, 118 Am. St. 626, 11 Ann. Cas. 107, 12 L. R. A., N. S., 343; *Leschen v. Brazelle,* 164 Mo. App. 415, 144 S. W. 893; *Hay v. American Fire Clay Co.,* 179 Mo. App. 567, 162 S. W. 666; *Sarasohn v. Kamaiky,* 193 N. Y. 203, 86 N. E. 20; *Watts v. Geisel,* 100 Ind. App. 92, 194 N. E. 502.) In *United States v. Manton,* 107 Fed. (2d) 834, 844, the question is considered, the court saying:

"An over-technical and strained application of the best evidence rule serves only to hamper the inquiry without at all advancing the cause of truth. 'The fundamental basis,' the Supreme Court has said, 'upon which all rules of evidence must rest—if they are to rest upon reason—is their adaptation to the successful development of the truth.' *Funk v. United States* 290 U. S. 371, 372, 381, 54 S. Ct. 212, 215, 78 L. Ed. 369. . . . . While there is some conflict in the decisions, the better rule is that so-called original and carbon copies are duplicate originals; and that one is as much primary evidence as the other. See 2 Jones on Evidence (2d Ed.) Sec. 798. They are made upon sheets of paper between which carbons have been interposed. The messages are impressed at the same time and by the same impact. To call one of them an original and the other a copy is simply to ignore the obvious."

The will signed by Mrs. Gearon was shown to have been in her possession 82 days before her death. There is not a single iota of testimony that Mrs. Gearon was ever dissatisfied with her will, other than some evidence to the effect that she had in mind drawing a new will, which she never did, or at least there is no evidence that she ever did. It must be conceded that under the provisions of section 14–307, I. C. A., a will may be revoked only by a definite act as provided in that section. There is absolutely no evidence that any attempt was ever made by Mrs. Gearon to revoke the will in conformity with the foregoing statute, or otherwise. In such event and in view

of the fact that the will was in the possession of Mrs. Gearon 82 days before her death the presumption would be warranted that its existence continued.

There are certain cases cited in the majority opinion for the purpose of upholding the conclusions reached therein, but none of the cases cited apply to a state of facts such as here involved.

The trial court in my opinion was correct in reversing the probate court, denying the admission of the will to probate, and in ordering the probate court to admit the will to probate as and in lieu of the lost and destroyed will of Mrs. Gearon. The evidence submitted was sufficient to justify the admission of the will to probate.

A lengthy dissenting opinion would serve no useful purpose. The sole question is one of statutory construction and involves the question of whether or not the proof offered satisfied the requirements of section 15–231, I. C. A. In my opinion the case of *McClellan v. Owens,* 335 Mo. 884, 74 S. W. (2d) 570, 95 A. L. R. 711, is decisive of the questions presented in this cause. I am satisfied that the proof satisfied the requirements and therefore feel justified in dissenting from the views expressed in the majority opinion.

MORGAN, J.—I concur in the dissenting opinion of Justice Budge. The portion of section 15–231 requiring the provisions of a lost or destroyed will to be "clearly and distinctly proved by at least two credible witnesses," if valid, means that the evidence establishing the provisions of the will must not be less satisfactory than would be the testimony of two credible witnesses thereto. In this case the provisions of the will were established by the production of a duplicate original, the genuineness of which has not been questioned. Documentary evidence of that character has greater weight to establish the provisions of a lost will than would the testimony of many witnesses, the accuracy of which would be dependent on frail and uncertain memories.

I further dissent from the majority opinion wherein it holds "The legislature, in conferring the authority to make a will and have it admitted to probate, and the testator's estate divested thereunder, may prescribe the procedure and

condition under which it may be done," and in holding I. C. A., section 15–231, does not conflict with article 2, section 1 and article 5, section 13, of the Constitution of Idaho.

After this case was argued, we called for briefs on the question of whether the statute here under consideration conflicts with article 2, section 1 and article 5, section 13 of the Constitution. These constitutional provisions are:

Art. II, § 1. "The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial; and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any powers properly belonging to either of the others, except as in this constitution expressly directed or permitted."

Art. V, § 13. "The legislature shall have no power to deprive the judicial department of any power or jurisdiction which rightly pertains to it as a coordinate department of the government; but the legislature shall provide a proper system of appeals, and regulate by law, when necessary, the methods of proceeding in the exercise of their powers of all the courts below the Supreme Court, so far as the same may be done without conflict with this constitution."

In response to our request counsel submitted briefs on this constitutional question. Counsel for appellants supported their contention, that the statute is constitutional, with the following points and authorities:

"I.

"The legislative power makes rules for the future; the judicial power decides controversies on past facts. 6 Am. & Eng. Ency. of Law (2nd Ed.) Const. Law, p. 1032; 16 C. J. S. Const. Law, p. 299, sec. 108; *McKnight v. Grant*, 13 Idaho 629 [92 Pac. 989, 121 Am. St. 287]; 34 C. J., p. 1184 Note 52 (b); *Lyon v. City of Payette*, 38 Idaho 705 [224 Pac. 793].

"II.

"The right to pass or receive property by will is a privilege extended by the legislature and subject to its regulations. 68 C. J. Wills, p. 414, sec. 7; 16 C. J. S., Const. Law, p. 615; *Hedin v. Westdala Lutheran Church*, 59 Idaho 241 [81 Pac. (2d) 741].

## "III.

"A statute will be construed as constitutional if possible. *Smallwood v. Jeter,* 42 Idaho 169 [244 Pac. 149]; Intermountain *Title Guaranty Co. v. Egbert,* 52 Idaho 402 [16 Pac. (2d) 390].

## "IV.

"Construing section 15–231 I. C. A. as a rule of evidence it would be constitutional. 12 C. J., Const. Law, p. 823, sec. 285; 20 Am. Jur., Evidence, p. 38, sec. 8; 11 Am. Jur., Const. Law, p. 1202, sec. 374; *Boise Irrigation and Land Co. v. Stewart,* 10 Idaho 38 [77 Pac. 25, 321]; *State v. Dunn,* 13 Idaho 9 [88 Pac. 235].

## "V.

"Construing section 15–231 I. C. A. as a rule of procedure of the probate court it would be constitutional. *Re Sharp,* 15 Idaho 120 [96 Pac. 563, 18 L. R. A. (N. S.) 886], 16 Encyc. Pleading and Practice, p. 1066.

## "VI.

"The wisdom of Section 15–231 as a rule of public policy was for the legisature to determine. *Pike v. St. Bd. of Land Commrs.,* 19 Idaho 268 [113 Pac. 447, Ann. Cas. 1912B, 1344].

## "VII.

"Section 15–231 I. C. A. is similar to other laws of the state prescribing a certain kind and quantity of evidence, which it is the policy of the state to require, and construed thus, the statute would be constitutional. I. C. A. 16–505; I. C. A. 31–703; *Bell v. Bell,* 15 Idaho 7 [96 Pac. 196]; I. C. A. 19–2017; *State v. Clark,* 27 Idaho 48 [146 Pac. 1107]; *State v. Shelton,* 46 Idaho 423 [267 Pac. 950]; I. C. A. 19–2015; I. C. A. 16–501; I. C. A. 16–508; I. C. A. 24–1701."

Respondents' counsel supported their contention, that the statute is unconstitutional, by points and authorities as follows:

## "I.

"Any act by which the legislature attempts to deprive the courts of their judicial power is void. Sec. 13, Art. V, Constitution of Idaho; Art. II, Constitution of Idaho; *McDougall v. Sheridan,* 23 Ida. 191 [128 Pac. 954]; 11 Am. Jur., pages 904 and 908.

## "II.

"It is beyond the legislative power to preclude or inhibit the courts from determining a question of fact when the proof of such fact has been presented by competent, material and relevant evidence. *Gordon v. Lowry* [116 Neb. 359], 217 N. W. 610; *State v. Flynn* [137 Or. 8, [299 P. 694, 300 P. 1024]; *Manley v. State of Georgia*, 279 U. S. 1 [49 Sup. Ct. 215, 73 L. Ed. 575]; *Missouri, K. & T. Ry. Co. v. Simonson*, [64 Kan. 802], 68 P. 653 [91 Am. St. 248, 57 L. R. A. 765]; *State ex. rel.* [v.] *Atkinson*, [271 Mo. 28] 195 S. W. 741; *Phillips v. Byrd*, [43 Okl. 556] 143 P. 684; Cooley Constitutional Limitations, Seventh Edition 526; *Meyer v. Berlandi* [39 Minn. 438], 40 N. W. 513 [12 Am. St. 663, 1 L. R. A. 777]; *In re Cate*, (Cal. [App.]) 273 P. 617; *O'Donnell v. Wells* [323 Mo. 1170], 21 S. W. (2d) 762; *Carolene Products Co. v. McLaughlin* [365 Ill. 62], 5 N. E. (2d) 447; *White v. Hall*, (1st Cir.) 53 F. (2d) 210; *Hall v. White*, (Mass. D. C.) 48 F. (2d) 1060.

## "III.

"Statutes attempting to deprive courts of any inherent or vested powers are invasion of judicial power and void. *Martin Thoe v. Chicago, Milwaukee & St. Paul Railway Co.*, [181 Wis. 456] 195 N. W. 407, 29 A. L. R. 1280; Annotation 29 A. L. R. 1287; *State v. McCarty*, 47 Ida. 117 [272 Pac. 695]."

No decision has been brought to our attention involving a constitutional provision like our article 5, section 13. However, the language is free from uncertainty. Article 2, section 1 divides the government of the state into three distinct departments. Article 5, section 13, expressly states that "The legislature shall have no power to deprive the judicial department of any power or jurisdiction which rightly pertains to it as a coordinate department of the government." This leaves but one question: To which department, the legislative or the judicial, belongs the power and duty to decide as to the measure of proof, or the number of witnesses, required to satisfy the judicial mind with respect to the truth of a matter submitted to a court for consideration and decision? Answer to that question is to be found in the authorities cited,

as above set out, in respondent's brief. There can be no doubt that this power and duty belong to the judicial, not to the legislative, department of government.

In Wigmore on Evidence, second edition, volume 2, section 1353, the rule, applicable to the question before us, is stated thus:

"The judicial function under the Constitution is to apply the law in controverted cases; to apply the law necessarily involves the determination of the facts; to determine the facts necessarily involves the investigation of evidence as a basis for that determination. To forbid investigation is to forbid the exercise of an indestructible judicial function. To make a rule of conclusive evidence, compulsory upon the Judiciary, is to attempt an infringement upon their exclusive province."

I am not in accord with the theory expressed by the Chief Justice that "Since the question was not raised by either party to the litigation and no assignment of error has been specified thereon, . . . . the question is not properly before us for decision." To follow that theory would necessitate a violation of our official oath, which is:

"I do solemnly swear (or affirm) that I will support the constitution of the United States, and the constitution and the laws of this state; that I will faithfully discharge all the duties of the office of Justice of the Supreme Court according to the best of my ability. So help me God." (I. C. A., sec. 57–401.)

Our obligation is that we will *support the constitution and the laws of this state,* not that we will do so only when their violation has been brought to our attention by a party litigant by an assignment of error. It is our sworn duty to uphold the Constitution when we are urged to apply and enforce a statute which violates it, whether the violation is presented by an assignment of error or not. In this instance the statute violates the Constitution in its attempt to deprive the courts of a power and jurisdiction which rightly pertains to them as a coordinate department of government.

Petition for rehearing denied.